QUINALTY et al. v. TEMPLE et al.

(Circuit Court of Appeals, Fifth Circuit. February 15, 1910.)

No. 1,881.

EVIDENCE (§ 106*)—TITLE—RECITALS IN DEED—EVIDENCE OF CHARACTER OF GRANTOR.

In an action of trespass to try title, where the record title was in plaintiffs' ancestor, and defendants claimed through a deed from one since deceased, who was a stranger to such title, but whose deed recited that the land had been conveyed to him by plaintiffs' ancestor by deed of a certain date, evidence of the general good character and reputation for truth and veracity of such grantor is not admissible in support of

such recital, nor is evidence of the character and habits of plaintiffs' ancestor.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 183; Dec. Dig. § 106.*]

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Action by Thomas Quinalty and another against T. L. L. Temple and others. Judgment for defendants, and plaintiffs bring error. Reversed.

Oliver J. Todd and John Hamman, for plaintiffs in error.

F. D. Minor (Geo. C. Greer and Greer, Minor & Miller, on the brief), for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action to recover 1,107 acres of land situated in Sabine county, Tex., brought in the court below by Thomas Quinalty and Charles Quinalty against T. L. L. Temple and others. John L. Quinalty obtained title to the land from the Mexican government in 1835, and he died about the year 1855. The plaintiffs were proved to be his sons and only heirs. The record shows that the plaintiffs are entitled to recover the land, if it was owned by John L. Quinalty at the time he died. The case turns on the question whether John L. Quinalty died seised and possessed of the land.

The defendants contend that he parted with the title before he died. To sustain this contention, they offered a deed of John Forbes to D. C. Barrett, dated February 17, 1837, conveying the land in question. John L. Quinalty is not a party to the deed, and, standing alone, it had no effect on his interest. This deed, however, contains a recital which, if true, shows that Quinalty had conveyed the land in question to Forbes. The recital refers to the land as "being the same land which he [Forbes, the vendor] purchased of John S. Quinalty by deed, bearing date October 7, 1836, now delivered to the present purchaser, who hereby acknowledges the receipt thereof." (The variance in the initial of the middle name—"S" for an "L,"—was treated as immaterial.) This deed was received in evidence, and the recital submitted to the jury as a circumstance to be considered by them in determining the question whether or not Quinalty, in his lifetime, had parted with the title. And the learned trial judge instructed the jury that, if he had not parted with the title, the plaintiffs were entitled to recover, and added:

"But, if you believe from the evidence in this case, taking all the circumstances into consideration as a whole that Quinalty had parted with his title, your verdict will be for the defendants."

The question submitted to the jury, therefore, was whether the recital in the deed to Barrett, that Quinalty had conveyed the land to Forbes, was true or untrue. Unless the jury was satisfied of its truth, they were instructed to find for the plaintiffs.

The defendants, to sustain and support the truth of the recital, were permitted to prove, against the objection and exception of the plain-

tiffs, that John Forbes, who conveyed to Barrett, was a man of good reputation "for honesty and fairness in his business transactions," and that the witness never heard "his integrity in land transactions questioned." Evidence as to the general character of John Forbes was offered and received, of course, on the theory that a man of good character for fairness in business transactions would not probably represent by a recital in a paper signed by him that the land had been conveyed to him, when it had not been. If, as a witness on the stand, he had testified to the recited facts, the same argument would apply—that his statement would be supported and strengthened by proof of his general good character for truth and veracity; yet it is well settled that evidence of the good character of a witness, whose character has not been attacked, is not admissible. Until an attack is made on it, the character of a witness is not in question. 2 Wigmore on Evidence, § 1104. The same is true as to the character of a defendant in a civil suit, where the nature of the action itself does not involve his general character; therefore evidence of his character cannot be received to contradict an imputation of dishonesty or fraud. Smets v. Plunket, 1 Strob. (S. C.) 372; Roach v. Crume (Tex. Civ. App.) 41 S. W. 86; Fowler v. Ætna Fire Ins. Co., 6 Cow. (N. Y.) 673, 16 Am. Dec. 460; Gebhart v. Burkett, 57 Ind. 378, 26 Am. Rep. 61; Porter v. Seiler, 23 Pa. 424, 62 Am. Dec. 341; McCowen v. Gulf, C. & S. F. Ry. Co. (Tex. Civ. App.) 73 S. W. 46; Timmony v. Burns (Tex. Civ. App.) 42 S. W. 133; Barton v. Thompson, 56 Iowa, 571, 9 N. W. 899, 41 Am. Rep. 119; Elliott v. Russell, 92 Ind. 526; Gertz v. Fitchburg R. R. Co., 137 Mass. 77, 50 Am. Rep. 285.

The recital of an alleged fact by John Forbes in a deed places him, to some extent, in the attitude of a witness; it is a written statement made by him which is in evidence. But, if we consider his position analogous to that of a witness, his evidence could not be bolstered and supported, no attack having been made on him, by proof of his general good character. Forbes, in his deed to Barrett, in which the recital is made, warrants the title conveyed by him. To that extent, he, or his estate, he being dead, may have an interest in the result of the suit. This makes his position somewhat analogous to that of a party to the suit. It is well settled that a party to a civil suit cannot offer proof of his general good character, it not being attacked or directly in issue, even to rebut an imputation of dishonesty or fraud. We see no reason for making a distinction between the position of Forbes and that of a witness or a party to the suit. The reasons for rejecting such evidence are equally applicable to him as a warranting vendor whose recitals of fact are in evidence. Evidence of character in such cases has but a remote bearing as proof to show that the act in question has or has not been committed. It is uncertain in its nature, because true character is ascertained with difficulty, and those who are called to testify are reluctant to disparage the influential and often too willing to disparage one under a cloud. At best, such evidence is a mere matter of opinion, and, in matters of opinion, witnesses are apt to be influenced by prejudice or partisanship, of which they may be unconscious, or by the opinions of those who first approach them on the subject. The introduction of such evidence, in civil cases, to bolster the character of parties

and witnesses who have not been impeached, would make trials intolerably tedious, and greatly increase the expense and delay of litigation. The rule that would admit evidence of the good character of the writer of the deed in question here would admit it as to the writer of any paper offered, whose statement was contested by other proof, or circumstances. The fact that a witness or a written statement in evidence is contradicted by other evidence in the case does not put the veracity of the witness or the writer in issue. The purpose of the contradicting evidence is to show that the witness or writer is not to be believed in this instance. The reason why he is not to be believed is not important. It may be his forgetfulness or mistake, or that he is deceived. The disbelief sought to be produced by the conflicting evidence is perfectly consistent with an admission of the witness' or the writer's general good character for veracity; and, until the character of the witness or writer is assailed, it cannot be fortified by evidence. Gertz v. Fitchburg R. R. Co., 137 Mass. 77, 78, 50 Am. Rep. 285; Tedens v. Schumers, 112 Ill. 263, 266.

Against the objections and exceptions of the plaintiffs, the defendants were permitted to offer evidence to show the character and habits of John L. Quinalty, the ancestor of the plaintiffs. The witnesses testified that he was of a roving disposition; that he did not care for anything; that he did not accumulate, but spent as fast as he made; that he ran horses across the river to avoid paying duty on same; that he danced, drank whisky, played the fiddle, etc. The tendency and purpose of the evidence was to show that he was thriftless and dissolute. The theory upon which it was received is probably best shown by an excerpt from the brief of the learned counsel for the defendants in error:

"It is believed that all of this evidence was relevant and material, the question for the jury being: Is it probable, under all the facts and circumstances in evidence, that the recital of John Forbes in his deed to D. C. Barrett as trustee is true? Evidence of the traits, characteristics, propensities, habits, and general manner of life of Quinalty was very material and relevant upon this issue."

The idea intended to be fixed on the minds of the jury was that a man like Quinalty would not have held the title to the land, but would have sold it. To adopt the words of the Supreme Court, in Xenia Bank v. Stewart, 114 U. S. 224, 231, 5 Sup. Ct. 845, 849, 29 L. Ed. 101:

"The evidence offered was inadmissible, because too remote and conjectural. The law requires an open and visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made from remote inferences."

In Thompson v. Bowie, 4 Wall. 463, 18 L. Ed. 423, the issue was whether certain promissory notes were given for a gambling debt, and testimony was offered to prove that the maker of the notes was, on the day of the date of the notes, intoxicated, and that, when intoxicated, he had a propensity to gamble. The judgment of the Circuit Court was reversed for receiving this evidence.

We cannot consent to the view that the traits, characteristics, propensities, and general manner of life of Quinalty were material and relevant upon the issue submitted to the jury. The evidence was re-

mote and conjectural. The fact that he drank whisky and played the fiddle no more tends to prove that he conveyed the land to John Forbes than proof that he kept sober and said his prayers would prove that he did not convey it.

We are of opinion that the trial court erred in overruling the objections to the evidence.

We express no opinion on other questions argued by counsel, as they may not be again presented in the same aspect.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.