MUTUAL LIFE INSURANCE CO. OF BALTIMORE, MD., *v.* KELLY.

320

(Decided March 28, 1934.)

*Messrs. Frazier & Holliday* and *Mr. J. W. Giffin,* for plaintiff in error.
*Messrs. Graham & Graham,* for defendant in error.

SHERICK, P. J.   The Mutual Life Insurance Company of Baltimore, defendant in the trial court, here seeks reversal of a judgment entered against it and in favor of Blanche Kelly, the beneficiary named in a life policy upon the life of one Harold Farson; and also an additional sum upon an accidental death provision thereof.

The petition avers that the insured was accidentally shot on the 19th of April, 1933, by a trap gun which had been placed on the inside of a cottage located on the banks of the Muskingum river, and that the insured died as a result thereof.

To this petition the insurer interposed three defenses, the first being a general denial; the second averred a condition of the policy of non-liability in the event that "insured dies in consequence of his or her own criminal action", and that insured did die in consequence of his own criminal act; the third defense plead a further contractual provision, in that "no accidental death benefit will be paid if the death of the insured resulted * * * from violation of law by the insured," and that he, the insured, did die as a result

of violating the law. The reply filed is a general denial.

The facts disclose that the insured and another had purchased a pair of pliers, and had thereafter proceeded to hunt mushrooms, and on their return home entered an enclosed lot belonging to one Brown. It is in evidence that four or five "keep out" notices were posted in conspicuous places about the premises, which notices the companion of the insured says he did not see. There is evidence of the fact that the cottage had a screened-in porch; that a few days prior to the happening the screen door was intact, closed, and hooked in two places with nails bent over the hooks; that after the happening this door was found open, the nails bent and broken, and the screen torn in two places convenient to the hooks. It further appears that the insured called his associate to the porch window to see a canoe that was inside the cottage, and that while he stood there admiring the canoe, he heard a shot and saw the deceased run off the porch; further than this he knows little or nothing of the transaction.

It is affirmatively in evidence as a part of the company's case that a readable sign was glued on the inside of the glass in the door through which the insured was shot. It read "Friendly warning, Keep out." This fact is negatively denied by several of the plaintiff's witnesses who were called in rebuttal. It is further proved and not denied that the gun set upon a tripod near the door had an iron rod attached to the trigger of the gun, which rod extended to within three or four inches from the lower part of the door, and that the door was bolted at the top. The almost conclusive inference is that the insured must have pushed in the door sufficiently at the bottom to spring the door, and thereby caused the gun to be discharged. The further evidence is, from one of the first arrivals on the scene, that the door "burst at the top" when

he applied pressure, and that he then entered thereby. There is some evidence pro and con concerning a strip nailed to the floor at the bottom of the door, but whatever the fact may be as to that seems to us to be immaterial. It is further in evidence that a box of fishing tackle that had belonged to Brown, which had reposed on the window ledge inside the porch, was afterwards found in the insured's pocket, along with the recently purchased pliers, which showed jaw marks like those on the nails found broken off at the screen door.

In view of this chain of circumstances we are unable to conceive how the jury could have arrived at the conclusion that the insured's trespass was but a technical trespass, and not a criminal trespass; unless it be that the jury was influenced by certain testimony which we feel was improperly admitted in evidence over objection.

We have painstakingly read every word of the evidence in this case to discover whether the company introduced any evidence which would place in issue the character of the insured. Such was not done by the pleading; nor was it done by the proof offered. No attempt was made to show that the insured had ever done a prior similar act, and the truth is that only facts and circumstances pertaining to this affair were placed in evidence.

In rebuttal the beneficiary was permitted to call a number of character witnesses, who testified that the deceased bore a good reputation and was a peaceable and law-abiding citizen. In this we think the court erred to the prejudice of the plaintiff in error.

The defendant in error asserts that this evidence was admissible and competent because of the fact that the second and third defenses in effect charge that the insured had committed a crime, that thereby his character was questioned and placed in issue, wherefor the rule applicable in criminal cases applied, to-wit, that

reputation evidence is admissible for the reason that a man with a good reputation is not as likely to commit a criminal act as one with a bad reputation. But the fact is overlooked that this is a civil action based upon a contract, wherein the insured's general character was not involved.

It is the generally accepted rule that in civil actions, even where fraud is imputed or dishonesty is charged, evidence of a party's good or bad character is incompetent in evidence unless it be made an issue by the pleadings or the proof, as in actions for libel and slander, malicious prosecution, or cases of seduction. In these exceptions to the rule, character is generally involved and the amount of the damages recoverable may be affected thereby.

Jones in his Commentaries on the Law of Evidence (2nd Ed.), Volume 2, pages 1190 to 1193, inclusive, Sections 639 and 640, adopts the reasoning of *Heileg* v. *Dumas,* 65 N. C., 214, and *Quinalty* v. *Temple,* 176 F., 67, 99 C. C. A., 375, 27 L. R. A. (N. S.), 1114, in discussing the general rule:

" 'If such evidence is proper, then a person may screen himself from the punishment due to fraudulent conduct till his character becomes bad. * * * Every man must be answerable for every improper act, and the character of every transaction must be ascertained by its own circumstances, and not by the character of the parties.' "

" 'At best, such evidence is a mere matter of opinion, and, in matters of opinion, witnesses are apt to be influenced by prejudice or partisanship, of which they may be unconscious, or by the opinions of those who first approach them on the subject. The introduction of such evidence, in civil cases, to bolster the character of parties and witnesses who have not been impeached, would make trials intolerably tedious and greatly increase the expense and delay of litigation.' "

The author further points out that in the ordinary case character evidence has but a remote bearing as proof as to whether or not the act in question has or has not been committed, for, as said in *Thompson* v. *Church,* 1 Root (Conn.), 312, "The general character is not in issue. The business of the court is to try the case, and not the man; and a very bad man may have a very righteous cause." .

The same author further considers the subject in the same volume, Section 663, page 1234, and says:

"Where the nature of a civil action does not involve the general character of a party, evidence as to that character cannot be offered to contradict an imputation of dishonesty, or even of fraud. The transaction presented in an ordinary civil case must depend upon its circumstances and not upon the character of the parties. In such a case, no matter how serious the moral delinquency involved in a fact, and how much the establishment of that fact may affect the reputation of a party, he cannot invoke the aid of his previous reputation to disprove the fact. * * * Whether the act charged or complained of is indictable or not is not material."

The reason for the rule is obvious. It is twofold. Administrative policy requires that litigation be kept within bounds, and in order that the real issue of a cause may be tried and not be confused with or beclouded by an irrelevant matter having but a remote bearing on the proof of the act or fact in issue.

We believe the principle determined finds recognition in a slander action found in *Sloneker* v. *Van Ausdall,* 106 Ohio St., 320, 325, 140 N. E., 121, 28 A. L. R., 759, 761, wherein it is held that "the good reputation of the plaintiff is presumed only until it is either attacked by the pleading or proof." Applying that rule to the controversy before us the insured's character must be considered good; and it not

having been generally attacked by the pleadings or proof, evidence of that fact was surplusage and irrelevant, for it was but proof of what the law presumed. It confused the real issue before the jury and led them afield.

It is held in a few jurisdictions that if a party is charged with fraud or an act involving moral turpitude, and the charge is based only on circumstantial evidence, it may be rebutted by proof of good character. This, however, is not a generally accepted exception to the doctrine stated. Especially is it not sound in an issue on contract. We find it disavowed in many cases, among which are: *Great Western Life Ins. Co.* v. *Sparks,* 38 Okla., 395, 132 P., 1092, 49 L. R. A. (N. S.), 724, and note; *Knights of Maccabees of the World* v. *Shields,* 156 Ky., 270, 160 S. W., 1043, 49 L. R. A. (N. S.), 853; *American Fire Ins. Co.* v. *Hazen,* 110 Pa., 530, 1 A., 605; *Stone* v. *Hawkeye Ins. Co.,* 68 Iowa, 737, 28 N. W., 47, 56 Am. Rep., 870; *Munkers* v. *Farmers' Ins. Co.,* 30 Ore., 211, 46 P., 850; and *Schmidt* v. *New York Union Mutual Fire Ins. Co.,* 67 Mass. (1 Gray), 529; see also *Sayen* v. *Ryan,* 9 C. C., 631, 6 C. D., 732, 3 O. D. (N. P.), 600.

We find it unnecessary to consider the remaining numerous claimed errors, save two. The beneficiary was permitted by the testimony of a non-expert witness to offer proof of an experiment made out of court with two sets of pliers, and their effect upon two nails of the size which the witness had broken off. This was offered for the purpose of affecting the credibility of defense evidence received without objection as to the condition of the nails in the casing of the screen door which had been broken off. We are of opinion that the evidence of such experiment should not have been received, for the sole reason that the conditions and circumstances under which the experiment was made were not shown to have been similar to the condition found and related by the defense witness.

One man may grasp a pair of pliers firmly. Another may hold this tool loosely in his hand when breaking off a nail. No two men would hold this instrument in exactly the same manner. Unless the tool were held in exactly the same fashion, and operated in the same manner, the scars upon the nails caused by the corrugated jaws of the pliers would not be the same in each case, or in different experiments. No doubt the proffer and receipt of this evidence accomplished the purpose intended, that is it produced different scarring on the nails and questioned the credibility of the evidence offered and received as to the actual conditions found at the scene of the transaction, as related by the defense witness. The result of the experiment was therefore not a fair test under the same conditions and circumstances, and should not have been received. This evidence likewise had its influence upon the jury, and is reflected by its verdict.

It is claimed that the trial court erred in its action in withdrawing from the consideration of the jury, after the conclusion of the opening argument by plaintiff's counsel, certain special requests previously given by the court before argument at the instance of the insurance company. We perceive no error in this act. The special charges as requested and given did not correctly state the law. The court possessed an inherent power to correct its own mistake. If it had not done so it would have been derelict in its duty. If the verdict had been in favor of the insurer in this instance, the court would without question have had to sustain its motion for a new trial by reason thereof, had the insured so moved. The case of *Rogers* v. *Garford,* 26 Ohio App., 244, 159 N. E., 334, is in point.

For the reasons assigned the judgment is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

LEMERT and MONTGOMERY, JJ., concur.