Argued October 21; decided November 30, 1896.

MUNKERS v. FARMERS' INS. CO.

(46 Pac.· 850.)

| 30   211|
|a30   460|

1. PROOF OF HANDWRITING—COMPARISON WITH GENUINE WRITINGS.— Under section 765 of Hill's Code, providing that evidence as to handwriting may be given by a comparison by a skilled witness, or by the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered, it is competent for a party to use as standards, for the purpose of showing by a comparison of handwriting that a material letter was written by such adverse party, any writings admitted or shown to be genuine, regardless of whether they refer to the matter in issue or not.

2. EVIDENCE OF CHARACTER* IN FIRE INSURANCE CASES.—In an action on a fire insurance policy, payment of which is contested on the ground that the fire was set by the insured, evidence as to the general good character of the plaintiff is not admissible, as this is not a case where the issue involves character, under section 842 of Hill's Code.

From Linn:   GEORGE H. BURNETT, Judge.

Action by Geo. W. Munkers against the Farmers' & Merchants' Insurance Company of Albany, Oregon, to recover on a fire insurance policy. After a trial before a

*In *Cooper* v. *Phipps,* 24 Or. 357, it was held that in actions for slander the good character of plaintiff cannot be shown until it has been attacked.—RERORTER.

jury, there was a verdict for plaintiff, and from the judgment entered thereon defendant appeals.

REVERSED.

For appellant there was a brief over the names of Messrs. James K. Weatherford and Starr, Thomas & Chamberlain, with an oral argument by Mr. J. R. Wyatt.

For respondent there was an oral argument by Mr. W. R. Bilyeu.

Opinion by MR. JUSTICE BEAN.

1. This is an action on a fire insurance policy issued to G. W. Munkers by the Farmers' & Merchants' Insurance Company of Albany, in this State. As a defense it is, among other things, alleged "That the plaintiff, either by his own hand set fire to the building which contained the property covered by said policy of insurance, or to the property itself, or caused fire to be set thereto through some person unknown to the defendant; and that he willfully, and for the purpose of cheating and defrauding this defendant out of the said sum of $900, caused the said property to be destroyed by the said alleged fire set forth in plaintiff's complaint." On the trial there was offered and received in evidence a communication addressed to the editor of the Oregonian, purporting to be a statement made by one J. N. Listmon as to the origin of the fire, but which the defendant claims and gave evidence tending to show was written by the plaintiff, and published at his instance, to avert suspicion from himself. For the purpose of showing that this communication was in the handwriting of plaintiff, the defendant offered to use for comparison therewith four certain letters admitted by the plaintiff to be genuine, and to have been written by himself; but the court allowed

only one, which had some reference to the matter in controversy, to be used for that purpose, and this ruling is assigned as one of the errors in the case. No papers not otherwise competent could be introduced in evidence in the courts of England for the mere purpose of enabling a jury or an expert to institute a comparison of handwritings with the document or signature in dispute until 1854, when parliament passed an act expressly authorizing such comparisons to be made: Rogers on Expert Testimony, § 130. In this country there is an irreconcilable conflict in the adjudged cases as to the right to institute a comparison of handwriting placed in juxtaposition, in the absence of a statute allowing such a procedure: 9 Am. & Eng. Enc. Law, 279 et seq.; Lawson on Expert and Opinion Evidence, 375 et seq. But all dispute on this question has been put to rest in this State by section 765, Hill's Code, which provides that "Evidence respecting the handwriting may also be given by a comparison, made by a witness skilled in such matters, or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered." Under this statute it is clear that any writing which is admitted to be or treated as genuine by the party against whom the evidence is offered may be used for the purpose of comparison with the writing or signature in question, although it may not be admissible in evidence for any other purpose: *Holmes* v. *Goldsmith,* 147 U. S. 150 (13 Sup. Ct. 288); *Peck* v. *Callaghan,* 95 N. Y. 73; *Baker* v. *Mygatt,* 14 Iowa, 131. The objection principally urged against such evidence is the embarrassment likely to arise from the multiplication of issues in respect to the genuineness of the writing offered as the standard of comparison. But under our statute no such question can arise, for it provides that such writings only as are admitted to be genuine, or such as the adverse party has so treated, shall be used for that purpose.

2. The next assignment of error is based upon the ruling of the trial court in admitting evidence of the good character of plaintiff for honesty and fair dealing, and as a peaceable and law-abiding citizen. This ruling we think was error. The rule is well settled that evidence of the character of a party is not admissible in civil actions, except in those cases in which the issue involves his character: Hill's Code, § 842*; 1 Greenleaf on Evidence, § 54; 1 Wharton on Evidence, § 47. Now, the character of plaintiff is not involved in the issue in the case under consideration, nor does his recovery depend upon whether it is good or bad. It is true that if the allegation of the answer that he burned the property in question, or caused it to be burned, should be proved, his reputation for honesty would be seriously affected, but so would that of a party against whom a charge of gross fraud, forgery, or deceit should be established in a civil action, and it has never been supposed that evidence of good character would be admissible on that account. It is not every allegation of fraud or wrong doing that involves character, within the meaning of this exception, for if it were so, the defendant's character would be in issue in most of the controversies in the courts of justice. The exception is of a technical nature, and is confined to certain cases from the nature of which character is of particular importance, such as actions for breach of promise, libel and slander, malicious prosecution, criminal conversation, seduction, and the like. In such cases character is directly involved in the issue, as affecting the amount of the damages, and evidence in respect thereto is therefore held admissible. But this action is not of that class. It was

*Section 842 of the Code provides that "evidence of the good character of a party is not admissible in a civil action, suit, or proceeding, unless the issue therein involves his character; nor of a witness in any action, suit, or proceeding, until the character of such witness has been impeached."—REPORTER.

so held in *Stone* v. *Hawkeye Ins. Co.*, 68 Iowa, 737 (56 Am. Rep. 870, 28 N. W. 47); and *Schmidt* v. *N. Y. Union Ins. Co.*, 1 Gray, 529, both which are directly in point. They were actions on insurance policies, and the defense in each case was that the plaintiff had himself burned the property, and the court held that proof of his good character was inadmissible, because it was not involved in the issue, and this ruling is supported by the adjudged cases. See 7 Am. & Eng. Enc. Law, 112, for reference to the authorities. It follows, therefore, that the judgment of the court below must be reversed, and a new trial ordered.

REVERSED.

Mr. Justice WOLVERTON, having been of counsel in the court below, did not participate in this decision.