Argued March 17; decided April 5, 1897.

STATE v. TICE.

(48 Pac. 367.)

1. EVIDENCE—STANDARD OF COMPARISON FOR HANDWRITING.—A writing not admitted or treated as genuine by the party against whom it is offered cannot, under the terms of section 765, Hill's Code, be received in evidence solely as a standard with which to compare a writing charged to be forged: *Munkers* v. *Farmers' Ins. Co.,* 30 Or. 211, approved and followed.

2. EVIDENCE OF HANDWRITING—SIGNATURE BY MARK.—The testimony as to the genuineness of handwriting contemplated by section 764, Hill's Code, extends to crosses or marks made as signatures, but the peculiarities of such marks, and the circumstances surrounding their execution, should be carefully considered in determining the value and weight to be given thereto.

3. DECLARATIONS OF CO-CONSPIRATOR.—Statements concerning a conspiracy made by one of the parties thereto after the common purpose has been effected are not competent evidence against other conspirators: *Osmun* v. *Winters,* 30 Or. 177, cited and applied.

4. EVIDENCE AGAINST CO-CONSPIRATOR.—On a charge of forging a will in pursuance of a conspiracy in which defendant participated, where the evidence tended to show that defendant forged the signature, testimony that an acknowledgment thereto was forged by others of the conspirators after the signature was written is admissible, since the question of whether the acknowledgment was part of the contemplated forgery is for the jury.

5. CORROBORATION OF ACCOMPLICE.—Testimony that a witness is acquainted with the handwriting of defendant charged with forgery, and recognizes the latter's signature, which appears attached to the forgery as that of a witness, to be in his handwriting, sufficiently corroborates an accomplice, and tends to connect the defendant with the commission of the crime charged.

From Multnomah:    THOS. A. STEPHENS, Judge.

Jonathan Tice was convicted of forging the signature of Nancy M. Love to a will.  Several others were charged with complicity in the affair, but they either pleaded guilty or were already in the service of the State for other incidents, so that Tice was the only one tried.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. John H. Woodward.*

For the State there was a brief over the names of *Cicero M. Idleman,* Attorney-General, and *Chas. F. Lord,* District Attorney, with an oral argument by *Mr. Idleman* and *Mr. Daniel J. Malarkey.*

Opinion by MR. JUSTICE WOLVERTON.

1.   The defendant was indicted with others, and convicted of the crime of forgery.  The subject of the forgery is an instrument purporting to be the last will and testament of one Nancy M. Love, and the crime consists, as the indictment charges, in falsely making and forging the name, "Nancy M. Love, her X mark," thereto.  At the trial a genuine will of Nancy M. Love, which she had subscribed by her mark, was, after proving her death, offered and admitted in evidence, over the objection of the defendant, for the sole purpose of affording a comparison of the alleged forged mark with the signature mark subscribed thereto.  Geo. G. Smith, a co-defendant who had pre-

viously pleaded guilty and received his sentence, testified, among other things, that Tice wrote Nancy M. Love's signature to the alleged will, and then his own. M. C. George, called as a witness for the State, testified that he knew Tice, and was familiar with his handwriting, and also with the mark of Nancy M. Love, and that the signature to the will and the name "Jonathan Tice" were in the handwriting of the defendant. The witness was, on re-direct examination, permitted, over the objections of defendant, to make a comparison in the presence of the jury of the mark to the alleged forged will with the one attached to the genuine will, and from such comparison he testified that in his opinion the mark subscribed to the pretended will was not the mark of Nancy M. Love. In this there was error. Under the English exposition of the common law rule the resort to a comparison of hands by placing them in juxtaposition for the purpose of determining the genuineness of a writing was not permitted, except in two instances; one was when a writing proved to be that of the party whose signature is in dispute is already in evidence, having been put in for other purposes, and the other pertained to ancient documents: Wharton's Criminal Evidence, §§ 555 and 556; Lawson's Expert Evidence, 327; *Mudd* v. *Suckermore,* Willm. W. & D. 405; S. C., 2 Nev. & P. 16 (1837); *Moore* v. *United States,* 91 U. S. 270. The rule has since been changed in that country by statutory enactment which permits comparison with "any writing proved to the satisfaction of the judge to be genuine." The rules upon the subject adopted in this country are not uniform. Some of the states adhere to the exposition of the common law doctrine as above stated; some, notably Massachusetts, hold, without statutory interposition, that a comparison may be made by the jury with other writings proved to be genuine, *Homer* v. *Wallis,* 6 Am. Dec. 169 (see also the

author's note at pages 171 and 172); *Commonwealth* v. *Coe,* 115 Mass. 481; and some of them have adopted statutes similar to the English enactment, but with different regulations touching the standard of comparison and the persons by whom it shall be made. According to the statutes of the latter states, the standard must be acknowledged or proved to the satisfaction of the court, and the comparison must be made by the jury alone, or by experts and the jury. These statutes relieve the question from the inextricable conflict which the courts have brought on by adverse holdings under the common law: *Baker* v. *Mygatt,* 14 Iowa, 131; *Peck* v. *Callaghan,* 95 N. Y. 73; *Georgia Masonic Co.* v. *Gibson,* 52 Ga. 640.

Our enactment touching the subject differs from any that we have been able to find. It is as follows: "Evidence respecting the handwriting may also be given by a comparison, made by a witness skilled in such matters, or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered": Hill's Code, § 765. This statute, it is held, has put the dispute elsewhere subsisting at rest, and a standard of comparison not admitted in evidence for another purpose, or otherwise relevant or competent, may, in this State, be submitted, by which to determine the genuineness of the writing in dispute: *Munkers* v. *Farmers' Insurance Co.,* 30 Or. —— (46 Pac. 850). See also *Holmes* v. *Goldsmith,* 147 U. S. 150 (13 Sup. Ct. 288). The tests of the standard prescribed by the section quoted must be held to exclude any other test that might be permissible elsewhere. Applying these tests, it is clear that the genuine will of Nancy M. Love ought not to have been admitted for the sole purpose of instituting a comparison between the signature to the alleged forged will with her mark constituting her signature to the true one. It does not appear from the record that the defendant had admitted, nor is it

shown that he had treated, the true will as a genuine writing; so that it was not competent for the witness, admitting that he was a person skilled in such matters, to institute the comparison.

2. By section 764 of Hill's Code, it is provided that "the handwriting of a person may be shown by any one who believes it to be his and who has seen him write, or has seen writing purporting to have been his, upon which he has acted or been charged, and who has thus acquired a knowledge of his handwriting." It was, therefore, competent for the witness to testify from his own knowledge of the handwriting of the accused, when acquired in any of the modes pointed out, and, under the authorities, such testimony may extend to the mark of Nancy M. Love: *George* v. *Surrey*, M. & M. 516 (1830); *Sayer* v. *Glossop*, 12 Jur. 465; *Strong's Ex'rs.* v. *Brewer*, 17 Ala. 706; *Fogg* v. *Dennis*, 22 Tenn. 47; *Lansing* v. *Russell*, 3 Barb. Ch. 325; *Little* v. *Rogers* (Ga.), 24 S. E. 856; Lawson's Expert Evidence, 296. But they are not uniform, and some judges have strongly characterized such attempts to establish the identity of a mark as impossible and unsound. In *Engles* v. *Bruington*, 4 Yeates, 345 (2 Am. Dec. 411), it is said that "to attempt to prove a mark to a will would be idle and ludicrous." In a later case from the same state *(Shinkle* v. *Crock*, 17 Pa. St. 159), LEWIS, J., says: "Where a mark, on inspection, appears to have nothing in its construction to distinguish it from the ordinary marks used by illiterate persons to authenticate their contracts, it is not the subject of this description of evidence." VAN NESS, J., in *Jackson* v. *Van Dusen*, 5 Johns. 144 (4 Am. Dec. 330), says: "The testator having made his mark, no evidence, of course, could be given or expected, to prove his handwriting," and in *Carrier* v. *Hampton*, 11 Ired. 311, RUFFIN, C. J., says: "For, although in some very extraordinary instances, the mark

of an illiterate person may become so well known as to be susceptible of proof, like handwriting, yet, generally, a mark, a mere cross, cannot be identified." Considering the manner in which marks of persons incapable of writing their own signatures are usually made, by merely touching the pen while the scrivener forms the character, it is a matter of doubtful propriety whether any person ought to be allowed, as a matter of evidence, to identify such a mark as a handwriting; but the mark of some persons, by reason of methods of their own adoption in its formation, and its inherent peculiarities, might be capable of identification, and we are of the opinion that such evidence ought to be permitted to go to the jury, but the attending circumstances touching the habits of the person whose mark is in the balance, his accustomed manner of making the same, and the peculiarities attending it which render it capable of identification, should be carefully considered and scrutinized in determining the weight to be ascribed thereto.

3. Referring to another phase of the case, it appears that the witness R. I. Eaton was permitted, over the objections of the defendant, to recount before the jury what Geo. W. Edgar, one of the co-defendants, had narrated to him concerning what the witness says he "supposed was the history of this instrument." Admitting that Edgar was a co-conspirator with the defendant in the forging of this will, yet this testimony was clearly incompetent to show the participation of the defendant in the forgery. It was a subsequent narration of the transaction, and could not be considered as part of the res gestae, or as declarations concurrent in time with the commission of the unlawful act. The rule regarding what declarations of a party to a conspiracy may be used against his coconspirators is well laid down in *Metcalfe* v. *Conner,* 12 Am. Dec. 340, and has been adopted by this court in

*Sheppard* v. *Yocum,* 10 Or. 402; and again in *Osmun* v. *Winters,* 30 Or. 177 (46 Pac. 782). We may be pardoned if we quote it again: "Any declarations by one of the parties at the time of committing the unlawful act are, no doubt, not only evidence against himself, but, as being part of the res gestae, and tending to determine the quality of the act, are also evidence against the rest of the party, who are equally as responsible as if they had themselves done the act. But what one of the party may have been heard to say at any other time as to the share which others had in the transaction, or as to the object of the conspiracy, cannot be admitted as evidence to affect them, for it has been solemnly decided that a confession is evidence only against the person himself who makes the confession, and not against others." The rule is as applicable in criminal as in civil cases. Mr. Wharton says: "When the common enterprise is at an end, whether by accomplishment or abandonment, no one of the conspirators is permitted, by any subsequent act or declaration of his own, to affect the others": Wharton's Criminal Evidence (9th Ed.), § 699.

4. Following the name of George G. Smith on the alleged will there appears what is denominated an acknowledgment of a notary public, which F. R. Muffett, a co-defendant, testified, over the objections of defendant, that he wrote at the suggestion of Edgar, and the action of the court in this regard is assigned as error, upon the ground that when the defendant signed the name of Nancy M. Love to the instrument, the acknowledgment was not appended thereto, and that such act was a subsequent transaction. But there was evidence to go to the jury of a conspiracy to forge this will, and it is a matter of proof for the jury's consideration as to what constitutes the forged instrument in all its parts. If the acknowledgment was appended in pursuance of a common design,

then it was part of the act of forging the alleged will; but if one of the conspirators, without the concurrence of the others, added the false acknowledgment, such act could not be said to be theirs. It was, however, proper for the whole matter to go to the jury, and it was for them to determine the part that the defendant took in the transaction, and thereby fix his guilt or innocence.

5. Lastly, the defendant moved the court for instructions to acquit when the evidence for the state was in, upon the ground that the testimony of the accomplices had not been corroborated by other evidence tending to connect the defendant with the crime charged. This motion was disallowed, and we think rightly, as the evidence of Mr. George, who testified to an acquaintance with the handwriting of the defendant and recognized the name Nancy M. Love attached to the alleged will as being in his hand, was sufficiently corroborative, and tended to connect him with the crime charged. But, there being error in other respects, as hereinbefore noted, the judgment of the court below will be reversed, and the cause remanded for a new trial.

REVERSED.

Argued November 25, 1896; decided February 8, 1897; rehearing denied.