Argued October 14, affirmed October 30, 1959
# STATE OF OREGON *v.* McGOWAN
345 P. 2d 831

*Dan M. Dibble,* Portland, argued the cause and filed briefs for appellant.

*David Robinson, Jr.,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was Charles E. Raymond, District Attorney, Portland.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL and KING, Justices.

KING, J.   (Pro Tempore)

This is an appeal by the defendant, William McGowan, from his conviction of the crime of knowingly uttering and publishing a forged bank check, in violation of ORS 165.115.

The principal question to be decided is: Was there sufficient proof of intent and knowledge offered by the state to sustain a conviction of the defendant?

During the month of October, 1957, Winlock Hendricks had a check book containing blank checks on

the head office of the United States National Bank of Portland, Portland, Oregon, in the glove box of his car. Mr. Hendricks' name and address were printed on the checks. On or about the 12th day of October, 1957, he discovered that a hole had been punched up through the bottom of the glove box of his car and that the blank checks were gone.

A check made out on a form similar to blanks missing from Mr. Hendricks' car was tendered by William McGowan, the defendant, to a clerk at Meier & Frank's store in Portland, Multnomah County, Oregon, on or about October 8, 1957, in payment of a pair of lady's shoes, priced at $4.99. The check was in the amount of $38, and the defendant received $33.01 in cash from the Meier & Frank clerk, in addition to the shoes.

The check was fully made out and endorsed at the time it was presented at the store.

The indictment returned against the defendant, omitting the formal portions, reads as follows:

"The said WILLIAM McGOWAN on the 8th day of October, A.D. 1957, in the County of Multnomah and State of Oregon, then and there being, did then and there unlawfully and feloniously with intent to injure and defraud, knowingly utter and publish as true and genuine to Meier & Frank Co., Inc., a corporation, a certain false and forged bank check, in words and figures as follows:

"WINLOCK HENDRICK   24-11
 16746 S. E. Main Street   1230
            2

  Portland, Oregon, 10/7 1957 No.——
Pay to the
 order of William McGowan  $38.00
Thirty Eight dollars ........................... Dollars

Head Office
THE UNITED STATES
NATIONAL BANK          Winlock Hendricks
of Portland
Portland, Oregon

The said William McGowan then and there well knowing the said bank check to be false and forged, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

He entered a plea of not guilty to this indictment, and at his own request went to trial before the court without a jury.

The state put on its case and rested. The defendant then moved for a directed verdict of acquittal. That motion was denied by the court and the defendant then rested. The defendant did not testify and did not call any witness in his defense.

Later the case was reopened for more testimony in behalf of the state, and both parties thereafter again rested their case.

The defendant sets forth only one assignment of error; namely:

"The court erred in denying defendant's motion for acquittal and in denying his motion to set aside the judgment and grant him a new trial."

The motion and ruling on the motion for acquittal were not renewed after the case was reopened and rested again, but it will be considered as though it had been renewed and again denied, as the matters raised therein would have to be proved beyond a reasonable doubt before the defendant could be found guilty. The motion for a new trial raised the same issues, so we are confronted with the question: Was there sufficient evidence to sustain a conviction?

The material elements of the indictment, briefly stated, are:

1. Place
2. That the bank check was false and forged
3. That defendant did knowingly utter and publish the check as true and genuine to Meier & Frank Co.
4. With the intent to injure and defraud

There was direct testimony that the check was cashed in Multnomah County, Oregon. Mr. Winlock Hendricks testified that he did not sign the check nor authorize anyone to sign his name, and that his signature was forged. There was no denial of that testimony, and thus the first two material elements of the indictment are proved.

■ In fact, the defendant concedes in appellant's brief as follows:

"The defendant concedes that all the elements of the alleged offense were thus established with the exception of his alleged intent to injure and defraud and his alleged knowledge that the check had been forged."

He admits uttering the check.

It is usually not possible to prove knowledge of a false or forged instrument or intent to injure and defraud by direct testimony. That would usually require a reading of the defendant's mind at the time of the alleged act. All the acts, facts and circumstances in evidence may be considered in determing knowledge and intent.

■ Underhill's Criminal Evidence (5th ed) p 1776, § 773, says:

"Intent is always a question for the jury. It may be inferred by them from what the accused

does and says and from all the facts and circumstances involved in the transaction."

The same authority on p 1778, rule 774, says:

"Evidence of similar forgeries is admissible to show a uniform course of acting from which guilty knowledge and criminal intent may be inferred."

In this case we have in evidence state's exhibit No. 4, a check for $18 in which William McGowan was the payee and the name of Winlock Hendricks was forged as the maker.

This check was presented by the defendant, William McGowan, to Barney Kuntz, an appliance salesman for Lampus Company, Portland, Oregon, in an effort to cash it. On being questioned, the defendant told Mr. Kuntz that he had received the check for doing some hauling.

Mr. Kuntz became suspicious and telephoned Mr. Hendricks at the phone number listed on the check and was told, "The man is a phoney. Don't cash it." Mr. Kuntz then informed the defendant that he could not cash the check for him and asked him to wait just a moment until he made another phone call, thinking he should call the police.

Mr. Kuntz testified the defendant then said: "No, I got to go. I got to go." He further testified that the defendant then went out the door and left the place and left the check (State's ex. 4) there without receiving any money for it.

This testimony was all received without objection. The offer of exhibit 4 was objected to as an attempt to show some other crime. The court received it for the purpose of showing intent.

We think it was rightly received for the dual purpose of showing intent and knowledge.

In *State v. Ankeny,* 185 Or 549, 559, 204 P2d 133, quoting Underhill's Criminal Evidence, the court says:

"When the commission of the act charged in the indictment is practically admitted by the prisoner, who seeks to avoid criminal responsibility therefore by relying upon the lack of intent or want of guilty knowledge, evidence of the commission of similar independent offenses before or after that upon which he is being tried, and having no apparent connection therewith is admissible to prove such intent or knowledge, which has become the material issue for trial."

■ In the present case there was an apparent connection between the two checks; the same forged signature of maker; the same payee; being uttered by the defendant in both cases within a period of a week and both checks being identical with the blank checks removed from Mr. Hendricks' car. Many Oregon cases sustain the above rule regarding evidence of other crimes to prove intent and knowledge, including: *State v. Johnston,* 143 Or 395, 22 P2d 879; *State v. Robinson,* 120 Or 508, 252 P 951; *State v. Germain,* 54 Or 395, 103 P 521. See also *Jones v. United States,* 179 F 584, 103 CCA 142; *Tedesco v. United States,* 118 F2d 737.

The case of *Smith v. State of Oklahoma,* 291 P2d 378, 380, is very similar to the present case. In addition to receiving evidence of related crimes, the court further says:

"It was contended that the evidence was insufficient to establish the guilty knowledge, but the question of intent to defraud, and guilty knowledge, are both questions for the jury to decide under the circumstances, and these elements may be proved by circumstantial evidence as well as direct testimony. * * * A strong circumstance indicating

guilty knowledge in this case is the fact that when the defendant observed Mr. Cagle making inquiry on the telephone concerning the validity of the check, he fled."

In the above case the evidence of leaving or flight was received in proof of the alleged crime. In the present case the trial court received state's exhibit 4 and the evidence of defendant's leaving during the phone call, only as going to the proof of intent and knowledge. It was rightly so received.

■ The state further showed by police officers Patterson and Winters that the defendant had made statements to them about attempts to cash several other similar checks at various places in Portland, and at about the same time. He told them the checks were received by him from a white man for a gambling debt. This was different from the explanation of the source of the check as related to Mr. Kuntz. Various other witnesses testified regarding the cashing of the check on which the indictment was returned and regarding statements made by the defendant in conversation with them.

There was ample evidence to go to a jury on the question of intent and guilty knowledge, with or without state's exhibit 4. There was ample evidence, likewise, for the jury, or the court in this case, to find a verdict of guilty.

Affirmed.