Argued October 27, reversed and remanded December 3, 1970,
former opinion withdrawn, petition for rehearing denied,
reversed and remanded January 28, 1971

## STATE OF OREGON, *Respondent, v.*
## HELEN McINTOSH, *Appellant.*

477 P2d 228
479 P2d 763

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief for appellant.

*Thomas H. Denney*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY, FORT and BRANCHFIELD, Judges.

BRANCHFIELD, J.

Defendant and one Henry Joseph Gaskill were charged with the crime of knowingly uttering and publishing a forged check. They were found guilty, and defendant has appealed from the judgment of conviction.

A social security check was issued, payable to defendant's mother, but the mother died a few days prior to the receipt of the check. Defendant had been living with and caring for her mother. She had signed her mother's name to social security checks numerous times, but always with her mother's consent.

The day after the mother's funeral defendant endorsed the check, using her mother's name, and gave the check to Gaskill who went to buy groceries with it. The grocer became suspicious and did not honor the check. He called the police who then arrested Gaskill. Defendant admitted signing her mother's name, saying she thought she was entitled to do so as she was the only heir. She gave various explana-

tions of subsequent events leading to the attempt to cash the check. She discussed the case with the district attorney, and was indicted and arrested about three weeks after Gaskill's arrest.

■ Defendant's first assignment of error accuses the court of failing to instruct the jury that an intent to injure and defraud is an essential element of the crime charged. The parties agree that such intent must be found by the jury in order for it to convict. See *State v. McGowan,* 218 Or 455, 345 P2d 831 (1939). While the questioned instruction does not as clearly spell out that element as does the Oregon State Bar's Uniform Jury Instructions, instruction no. 260.11, the instructions as a whole told the jury there could be no guilty verdict in the absence of finding that such intent had existed. The instructions must be considered as a whole. See *State v. Hammick,* 2 Or App 470, 469 P2d 800 (1970), *State v. Keffer,* 3 Or App 57, 471 P2d 438 (1970).

■■ Defendant's second assignment of error is that the court refused to reinstruct the jury upon its request, concerning the language of the "verdict slip." The advisability of reinstructing the jury lies within the sound discretion of the trial court. *State v. Flett,* 234 Or 124, 380 P2d 634 (1963). Defendant did not object to the refusal of the court to give a further instruction. Only if such refusal amounted to egregious error can she now obtain relief on that ground.

Defendant argues that the request for more information indicates the jury was confused as to whether intent to injure or defraud was a necessary element of the crime charged, and that therefore we should examine the circumstances and find reversible error. Due to the inadequacy of the record, we are

unable to give this assignment the attention it may well deserve because of its relationship to the first assignment. The jury sent a note to the trial judge requesting further instruction. That note was not sent to this court as part of the record. The report of the incident in the transcript does not disclose whether the judge read the note aloud and, if so, which words attributed to the judge were his own and which were contained in the jury's note. Readily apparent mistakes elsewhere in the transcript, and the incomprehensibility of what the judge allegedly said, raise doubts as to whether the judge was quoted with exactitude. We cannot determine whether there was error nor, if so, whether it was serious. But it is not necessary for us to rule on this assignment because we must reverse for another reason, and it is unlikely that the same circumstances will arise in the event of retrial.

■ Defendant contends that denial of her motion for a mistrial constitutes reversible error. That motion was based upon a reoffer by the prosecutor of a statement by defendant which had been suppressed previously. It is settled that granting or denying a motion for a mistrial is largely within the sound discretion of the trial judge. See, e.g., *State v. Hoffman*, 236 Or 98, 385 P2d 741 (1963). Neither the statement complained of nor its substance was placed before the jury. The trial judge properly exercised his discretion.

The trial court instructed the jury that ten of their number were sufficient to return a verdict. That instruction was properly given. See *State v. Gann*, 254 Or 549, 463 P2d 570 (1969).

Twenty-five exhibits were offered in this case, of

which 24 were admitted. The record as transmitted to us contains only 10 exhibits. The missing exhibits are not accounted for by the trial court clerk. The lack of exhibits and the imperfect transcript interfered with review of the case on its merits. We have some doubt as to the sufficiency of the evidence to make a jury question on the element of intent to defraud, but since that question was not raised we do not decide it.

5. The jury was polled after it returned its verdict. According to the transcript, nine jurors answered "yes" to the question, "Is this your verdict?" Two jurors answered "no." We do not know the answer of the twelfth juror, if he existed. The Oregon Constitution, Art I, § 11, says in part, "* * * provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, * * *." The court reporter has certified the transcript as being true and accurate, and the trial judge has entered an order settling the transcript. We must accept the certificate and the order as being sufficient to overcome our suspicions of inaccuracy. If only nine members agreed, there was no verdict.

Reversed and remanded.

### ON PETITION FOR REHEARING

Defendant was convicted before the Circuit Court, Umatilla County, Henry Kaye, J., of knowingly uttering and publishing a forged bank check, and she appealed. The Court of Appeals, Foley, J., held that where principal issue was whether defendant had intent to defraud, failure to give clear instruction on intent was prejudicial error.

'On respondent's petition for rehearing filed December 22, 1970.

Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem, for petition.

No appearance contra.

Before SCHWAB, Chief Judge, and FOLEY, FORT and BRANCHFIELD,* Judges.

FOLEY, J., on petition for rehearing.

6. Defendant and one Henry Joseph Gaskill were convicted by a jury of knowingly uttering and publishing a forged bank check. Defendant appealed and we reversed the conviction because, although not assigned as error, the record (apparently through clerical error) indicated only nine jurors had agreed upon the verdict. *State v. McIntosh,* 4 Or App 407, 477 P2d 228 (1970). We accepted the record as furnished to us as conclusive on this point. This was not an issue and we now conclude that we should not have based our decision on that ground. We therefore withdraw our

---

* Branchfield, J., did not participate in this decision.

former opinion and re-examine the issues in the case.

A \$51 United States government social security check was issued payable to defendant's mother, who died a few days prior to the arrival of the check. Defendant had been living with and caring for her mother and testified she had signed her mother's name to social security checks numerous times, always with her mother's consent. Defendant was her mother's sole heir. The check was for the month of May and the death occurred May 22, 1969.

On June 3, 1969, defendant indorsed the check, using her mother's name, and gave the check to Gaskill who went to buy groceries with it. The grocer became suspicious and did not honor the check. He called the police who then arrested Gaskill. Defendant gave various explanations of events leading to the attempt to cash the check but admitted signing her mother's name, saying she thought she was entitled to do so since she was the only heir. She was indicted and arrested about three weeks after Gaskill's arrest.

Defendant's first assignment of error alleges that the court failed to instruct the jury that an intent to injure or defraud is an essential element of the crime charged. The parties agree that such intent must be found by the jury in order for it to convict. See *State v. McGowan*, 218 Or 455, 345 P2d 831 (1959). It is also conceded that no instruction on intent as such was given. The court read the indictment to the jury and also told them:

> "Oregon law provides: That it is unlawful for any person who, with intent to injure or defraud anyone, to knowingly utter or publish as true or genuine any forged check."

The court further instructed the jury that:

"Any person who knowingly offers a forged check, with the intention it be accepted as genuine, is guilty of the crime of uttering and publishing a forged check, whether or not the check is accepted."

It told the jury that the material allegations of the indictment were as follows:

"* * * [A]ll of the material allegations of the indictment * * * are, first, that a crime has been committed as alleged in the indictment.

"Second, that the defendants are the persons who committed the crime.

"Third, that the crime was committed in Umatilla County, State of Oregon."

It is to be noted that the court did not give the Oregon State Bar's Uniform Instruction No. 260.11 on "uttering forged instrument" which reads in pertinent part as follows:

"* * * [The state must prove] every material allegation of the indictment as follows:

"First, that the crime was committed in ............... County, Oregon.

"Second, that the crime was committed on or about the ........ day of ....................., 19........, which is the date alleged in the indictment.

"Third, that the * * * [check] was false.

"Fourth, that the defendant knowingly uttered and published * * * the * * * [check] to (Name) with knowledge that the writing was false.

"Fifth, *that the defendant acted with an intent to defraud.*" (Emphasis supplied.)

The instruction which the court actually gave did not tell the jury specifically that one of the material allegations of the indictment was an intent to defraud as does the uniform instruction.

Immediately after the instructions were concluded the defendant excepted in part:

"MR. YOKOM: * * * [T]here is no instruction that they must have intention to defraud. * * *

"THE COURT: Your exception will be noted."

No further instruction was given to the jury, which had then retired, and several hours later the following occurred:

"(The jury then returned at 2:55 o'clock p.m.)

"THE COURT: Members of the jury I received your note, as I read the note on your verdict slip states *no intent to injure and defraud as does the indictment.* Please clear this matter. All that the Court can tell you is that the verdict forms which were submitted to you are sufficient for you to express your determination of a verdict in this case. You may retire to the jury room and complete your deliberations." (Emphasis supplied.)

Since the execution of the indorsement and the presentment of the check were admitted, the principal issue in this case was whether or not defendant had an intent to defraud. It is possible that the jury could have inferred that such intent was necessary from the instructions given. But when the court in defining the material allegations of the indictment failed to include intent to defraud, the jury may reasonably have been uncertain about that requirement. After the matter was called to attention by the defendant's exception, it was again brought to the notice of the court by the jury's note indicating its apparent uncertainty. This reinforces our belief that the jury was in a quandary as to whether intent to defraud was an element of the crime. In this case, we think the defendant was entitled to a clear instruction on the requirement of an intent to defraud as a necessary element

of the offense charged, and the court's failure to give such instruction resulted in prejudicial error to defendant. This holding makes it unnecessary for us to consider the other assignments of error.

Former opinion withdrawn; rehearing denied; reversed and remanded.