Argued October 26, affirmed December 10, 1970

# STATE OF OREGON, *Respondent, v.* TOMMY O'DELL WHITE, *Appellant*

477 P2d 917

152

*Dennis V. Gilbert,* Portland, argued the cause and filed the brief for appellant.

*James A. Sanderson,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

FOLEY, J.

The defendant, Tommy O'Dell White, was convicted of knowingly uttering and publishing a forged money order in violation of ORS 165.115. He appeals from a judgment sentencing him to five years' imprisonment.

On or about March 14, 1968, the defendant entered a Safeway store in Portland, presented a money order in the amount of $95 to a grocery clerk, one Elsie Peggar, and requested that she cash it. The clerk called the assistant manager to "O.K." the money order. After examining the money order the assistant manager stated that he would have to take it up to the office and "check it out." The defendant waited near the check-out counter for a few moments and then left the store. The money order in question was one of nearly 100 stolen from Tom's Market, a store in Clackamas, Oregon, on or about March 13, 1968. It was for attempting to cash this money order that defendant was convicted. Defendant makes five assignments of error.

## ASSIGNMENT OF ERROR NO. 1

This assignment concerns a ruling by the trial court on the reception of certain evidence.

The state sought to prove by evidence of their serial numbers the money orders which were stolen from Tom's Market on March 13, 1968. The state called Delmar G. Allen, Supervisor of the Oregon area for Travelers Express Company, Inc., the issuer of the money orders. He testified that on March 14, 1968,

upon notice from the owner of Tom's Market in Clackamas, Oregon, that money orders were missing, he went to the store and took inventory to determine which and how many money orders were stolen.

The witness then identified state's exhibits 1 through 4 as photostatic copies of a money order inventory, a receipt for money orders, and two reports of stolen money orders. Allen testified that the originals were kept in the company's vaults in Bell Gardens, California, and that he obtained the originals, copied them, then returned the originals to his company in California. The state then offered the exhibits in evidence.

■ Defendant objected to the admission of the four exhibits because they were copies, stating that there was no showing "that the originals have been lost or destroyed," and "[i]n addition, there is no testimony, no foundation so far as to who prepared these or testimony as to the authenticity of the information on the sheets." The court then excused the jury and conducted a discussion with counsel on the issue. After assuming that the photostatic copies were "as good as the originals," the court concluded that they were business records and that the witness could testify from them as to the serial numbers of the traveler's checks that were stolen but decided it would "not permit these documents in evidence as the basis of the proof of their contents." In other words, the court's ruling permitted the state to present oral testimony from the exhibits as business records, but did not permit the documents themselves in evidence.

The admissibility of business records in evidence is controlled by ORS 41.690 which provides:

"A record of an act, condition or event, shall,

in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, *and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.*" (Emphasis supplied.)

This statute allows the trial court a great deal of discretion in determining whether to admit business records in evidence. We find no reason to conclude that the court erred in deciding that the four exhibits were business records.

■■ Part of defendant's objection was that the exhibits were copies, rather than the originals. They were, in fact, photographic copies, produced by a copying process commonly known as "xeroxing," or a similar process, which produces such accurate reproductions of the original writing as to preclude any reasonable challenge that they are facsimiles. A federal appeals court, in discussing the reason for the "best evidence rule," said in *United States v. Manton*, 107 F2d 834, 845 (2d Cir 1938):

   "* * * [T]he best evidence rule should not be pushed beyond the reason upon which it rests. It should be 'so applied', as the Supreme Court held in an early case, 'as to promote the ends of justice, and guard against fraud or imposition.' Renner v. Bank of Columbia, 9 Wheat. 581, 597, 6 L. Ed. 166. * * * The rule is not based upon the view that the so-called secondary evidence is not competent, since, if the best evidence is shown to be unobtainable, secondary evidence at once becomes admissible. And if it appear, as it does here, that what is called the secondary evidence is clearly equal in probative value to what is called the primary proof, and that fraud or imposition, reason-

> ably, is not to be feared, the reason upon which the best evidence rule rests ceases, with the consequence that in that situation the rule itself must cease to be applicable, in consonance with the well established maxim—cessante ratione legis, cessat ipsa lex."

Nothing was contained in defendant's objection which indicated he had any reason to doubt the accuracy of the photostatic copies. Thus the reason for applying the "best evidence rule" does not appear to be present. We hold that the purpose of the best evidence rule is to secure the most reliable information as to the contents of documents when those contents are disputed. If, however, there is no good faith dispute, as here, over the accuracy of the document presented, the "mystical ideal of seeking 'the best evidence' or the 'original document' "[1] will not be pursued.

■ Though the court gave no specific reason for excluding the exhibits themselves from evidence, it appears from the record that it did so because it erroneously thought the exhibits contained, in addition to the serial number information, matters about which the court did not believe the jury should be informed. Although the court did err in excluding the exhibits, the defendant was not prejudiced thereby. The fact that these records were not available for examination by the jury undoubtedly reduced rather than enhanced their credibility.

## ASSIGNMENT OF ERROR NO. 2

■ Defendant claims that the court erred in admitting into evidence a handwriting exemplar which was used as a basis of comparison for the endorsement

---

[1] McCormick, Evidence 424, 425, § 209 (1954).

on the allegedly forged money order. Defendant asserts that there was not adequate proof that the exemplar was a genuine sample of his handwriting.

On direct examination Detective William R. Harms testified that he obtained the exemplar in question from defendant on May 21, 1969, but inexplicably failed to sign the exemplar as a witness. On cross-examination Detective Harms admitted that he "could not state as a fact" that the exemplar offered in evidence was the same one he had witnessed. On redirect the prosecutor elicited the fact that the detective obtained one and only one exemplar on May 21, 1969— that one being from the defendant. Subsequent to the detective's testimony an expert witness stated that, in his opinion, the exemplar and the endorsement on the allegedly forged money order, state's exhibit 5, were authored by the same person.

Except with respect to ancient writings, ORS 42.070 sets out the requirements for and limitations on the introduction of evidence of one's handwriting by means of comparison.

> "Evidence respecting the handwriting may also be given by a comparison made by a witness skilled in those matters, or the jury, with writings admitted or *treated as genuine* by the party against whom the evidence is offered." (Emphasis supplied.)

(See also *State of Oregon v. Cahill*, 208 Or 538, 293 P2d 169 (1955), cert den 352 US 895, 77 S Ct 132, 1 L Ed 2d 87 (1956); *State v. Tice*, 30 Or 457, 48 P 367 (1897); *Munkers v. Farmers' Ins. Co.*, 30 Or 211, 46 P 850 (1896).) Under this statute, the handwriting exemplar was properly admitted into evidence if it was either admitted to be genuine or treated as gen-

uine by defendant. Since he quite clearly did not admit that the exemplar was genuine, we must determine whether the state established that the defendant treated it as such.

The Oregon Supreme Court in *State v. Scott*, 63 Or 444, 128 P 441 (1912), was presented with a somewhat similar question and they answered it as follows:

> "It has been shown to the satisfaction of the circuit court that the writing by the defendant in the sheriff's office was performed voluntarily. *The matter there written was certainly treated by the defendant as genuine, having been inscribed by himself in person,* and hence * * * was admissible as a proper standard of comparison with the writing mentioned in the indictment." (Emphasis supplied.) 63 Or at 450.

A Note and Comment appearing in 41 Or L Rev 154 (1962), entitled *Evidence—Handwriting Samples— "Treated as Genuine,"* throws additional light on the question:

> "Under the Oregon statute, then, a writing can be used as a standard for comparison when there is evidence that the writing has been admitted to be genuine or when that writing has been proved to be genuine by testimony about the actions of the party against whom the evidence is offered showing a treatment of the writing as genuine. * * *" 41 Or L Rev at 157-58.

Direct evidence, uncontradicted by the defense, was given in the form of testimony by Detective Harms from which the conclusion could be drawn that the exemplar in question was authored by defendant. See ORS 41.250 and 41.260. Proof that defendant authored a writing is sufficient to establish that he treated that writing as genuine. The circuit court properly admitted the handwriting exemplar into evidence.

## ASSIGNMENT OF ERROR NO. 3

■ Defendant's third assignment consolidates two alleged errors committed by the court, one in permitting the prosecution on redirect examination to exceed the scope of defendant's cross-examination, and the other in allowing the prosecution to reopen direct examination after defendant had waived cross-examination.

The first alleged error stems from an examination of one of the state's witnesses, Officer Robert Peschka. Direct examination centered on the comparison of the handwriting on state's exhibit 5, the allegedly forged money order, with two handwriting exemplars authored by the defendant. Defendant's cross-examination consisted of one question and answer:

"Q. Officer Peschka, I understood that you reached the conclusion that the defendant's writing was that of the endorsement on the back of the money order, and also that you were unable to form an opinion as to whose writing was the face of the money order. Is that correct?

"A. Yes, that is correct."

Over defendant's objection, the state on redirect examination interrogated the officer about the face of the money order. The culminating question and answer were as follows:

"Q. Do you have an opinion as to whether or not those—looking at those two writings, Mrs. P. Waterman, and the name, White, do you have an opinion as to whether or not those were authored by the same writer?

"A. It is my opinion that one person filled out the face of this money order in its entirety."

Defendant concedes that this issue is controlled by ORS 45.550 which provides, in part, that a witness may be re-examined "as to any new matter upon which he has been examined by the adverse party." On direct examination Officer Peschka indicated that he could not form an opinion as to whether the writer of the two exemplars was also the writer of the face of the money order. He did not say he had no opinion as to the author of the face of the money order. On cross-examination defendant's question and Officer Peschka's answer suggested that the witness had no idea whatsoever as to the author of the face side. On redirect the prosecution attempted to clarify this point and elicited the fact that the witness believed that one person had filled out the entire face of the money order. The testimony given on redirect dealt with new matter raised on cross-examination. In any case, it is within the discretion of the trial court to allow re-examination of a witness on the same matter. ORS 45.550; ORS 45.530.

The second alleged error also concerns examination of a witness within the discretion of the trial court and does not warrant discussion.

## ASSIGNMENT OF ERROR NO. 4

■ In his fourth assignment defendant claims that the court erred in admitting testimony that the defendant engaged in other criminal activities similar to the one for which he was convicted, though his identity as the person so engaged had not been established and though there was no proof that he committed other crimes.

The challenged testimony was given by one Merrill White, assistant manager of a Big C store in

Portland. The witness stated that a man whom he was "reasonably sure" was the defendant came into the store in March 1968, and cashed a money order made out in the apparently identical manner as was state's exhibit 5. The money order was subsequently returned to the store with the notice that it had been stolen. The witness identified the money order as state's exhibit 8.

A series of Oregon Supreme Court cases have permitted the introduction of such evidence to prove knowledge and fraudulent intent. *State v. Williams*, 250 Or 513, 443 P2d 612 (1968); *State v. Holbert*, 242 Or 228, 408 P2d 941 (1965); *State v. Cruse*, 231 Or 326, 372 P2d 974 (1962); *State v. McGowan*, 218 Or 455, 345 P2d 831 (1959). However, defendant contends that there was not sufficient proof of identity to connect him with these allegedly criminal activities. The witness was not positive in his identification of defendant but was reasonably sure defendant was the man who presented the money order. The question of identity was one for the jury as are all questions of fact in trials by jury, ORS 17.240 to 17.250. The lack of positiveness of the witness goes to the weight which the jury might accord to his testimony but not to its admissibility. No error was committed here.

## ASSIGNMENT OF ERROR NO. 5

At the close of the state's case defendant moved for a judgment of acquittal on the ground that the state had failed to prove the elements of the crime charged. He assigns as error the court's denial of the motion.

■ In considering this assignment this court must review the evidence in the light most favorable to the

state and sustain the trial court's action if there is any substantial evidence to support the verdict. *State v. Livingston,* 2 Or App 587, 469 P2d 632 (1970); *State v. Shipman,* 2 Or App 359, 468 P2d 921 (1970). Defendant was indicted for "knowingly uttering and publishing a forged money order." This requires that the state prove the following elements:

that defendant

(1) knowingly and with intent to defraud

(2) uttered and published

(3) a forged

(4) money order.

There was adequate proof that defendant "uttered and published" a money order. The question then becomes whether the money order was "forged." Thomas Morrow, the owner of the store from which 96 money orders were allegedly stolen, testified that state's exhibit 5 was not a validly issued Travelers Express money order because it did not bear the usual check protector stamp which a valid money order would have contained. This is sufficient proof that the money order was falsely made to present a question for the jury.

■ Finally, the state must introduce evidence of knowledge that the money order was forged. There was testimony that defendant departed from the Safeway store without his money order when the assistant manager removed it to his office to examine it, and that on two other occasions during March 1968, defendant cashed money orders in stores, which money orders were subsequently reported to have been stolen. *State v. McGowan,* supra, which is similar in many respects to the case at bar, held that evidence of

both flight and the commission of similar offenses was admissible to show knowledge and fraudulent intent. In any event "[p]roof of knowledge in any case is by inference from the surrounding circumstances," and any factual dispute must be resolved by the jury. *State v. Shipman,* supra, 2 Or App at 362.

There being no error, the judgment is affirmed.