Argued and submitted February 15,
affirmed April 7, reconsideration denied May 15,
petition for review allowed only on first
two points July 2, 1980 (289 Or 337)

# STATE OF OREGON,
*Respondent,*

*v.*

# CHARLES EUGENE HARTFIELD,
*Appellant.*

## (No. 78-10-15935, CA 14132)

609 P2d 390

Judy Danelle Snyder, Portland, argued the cause and filed the brief for appellant.

Christian W. Van Dyke, Assistant Attorney General, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant appeals his conviction on two counts of arson, one in the first and one in the second degree, and for burglary in the second degree in violation of ORS 164.325, 164.315 and 164.215. The convictions for burglary in the second degree and arson in the second degree were for unlawful entry into a shoe store for the purpose of committing arson, and for arson of that store. He was convicted of arson in the first degree for placing a nearby home in danger of fire.

Defendant raises a number of assignments of error. Although we conclude that it was error to allow the state's handwriting expert witness to base his opinion on documents which were improperly admitted, the error was not such as to require reversal, and we affirm.

Shortly after midnight on May 11, 1978, fire was discovered at a Kinney Shoe Store located at 1331 North Lombard, Portland. Two persons were seen emerging from the building shortly after the fire started. Within a very short time the building was burning fiercely. The smoke was so thick that a house about 60 feet from the store was evacuated. The blaze was a hot, fast fire and there is no dispute that arson was the cause.

Investigation led to defendant and Richard Losh, the latter of whom negotiated a guilty plea of second degree arson prior to the trial of defendant. Losh was the state's chief witness at trial.

Losh testified that defendant offered him $250 to assist in the destruction of merchandise and records in the Kinney store because the store manager, a friend of defendant, feared a pending audit and had hired defendant to destroy the store contents.

The afternoon before the fire, the witness testified, he found tacked to his door a note reading:

"Here's some money buy the can's and gas. don't forget to think about how to light it. Rick *OK* see you at 9:00 be at Waddles Jan Beach."

Losh testified that he recognized the handwriting as defendant's and that he found $20 under the floor mat of his car, where defendant had previously told him money for the purchases would be left.

With that money Losh purchased two five gallon gasoline cans and filled them with gasoline. He said he met defendant at Waddle's restaurant at Jantzen Beach that evening and they drove to the Kinney Shoe store. Losh testified defendant unlocked the back door with a key, which defendant said was given him by the manager. Once inside, he and defendant poured gasoline throughout the store, Losh ignited the gasoline and he and defendant made a hasty exit. However, Losh received burns requiring his hospitalization.

Corroboration of Losh's testimony was provided by several state's witnesses. Two of them testified that defendant had admitted his guilt to each of them. That evidence alone was sufficient corroboration of the accomplice's testimony. *State v. Howard,* 214 Or 611, 331 P2d 1116 (1958). One, a mutual friend of Losh and defendant, testified that defendant had called him in the middle of the night of May 10-11 and asked to meet with him. When they met at a restaurant about 1 a.m. defendant told him that he and Losh had set the Kinney store on fire. The other witness, Losh's girlfriend, testified that some weeks after the fire defendant admitted to her that he and Losh set the fire. Another witness testified that defendant gave her an envelope containing $100 to deliver to Losh while he was recuperating from burns at the hospital, which she did.

The state attempted to corroborate the accomplice's testimony further by expert testimony tending to prove that defendant wrote the note produced by Losh. The handwriting expert, a corporal with the Oregon State Police, compared the handwriting on the note with employment applications for Kinney Shoe Corporation, a Naturalizer Shoe store, and documents kept

in personnel files from Nordstrom's, all of which purported to contain defendant's handwriting and signature. The witness also was supplied with defendant's signature on a constitutional warning rights form and a handwriting exemplar written by defendant at the Fire Marshall's office after he was taken into custody,[1] neither of which was used as an exemplar.

The witness testified that by using the employment applications as exemplars it was his opinion that there was a strong possibility defendant had written the note; he was 90% sure. He said he could not be positive because the samples of handwriting were so few.

Defendant contends that the handwriting comparison was improper because the witness had compared the writing on the note with handwriting samples admitted in evidence over defendant's objection on the ground that they were not "admitted or treated as genuine by [defendant]" as required by ORS 42.070. That statute provides:

> "Evidence respecting the handwriting may also be given by a comparison made by a witness skilled in these matters, or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered."

The statute sets a strict standard, the purpose of which is to avoid raising collateral issues. The test is not whether the exemplar used for comparison with a questioned writing is genuine, but whether the party against whom the evidence is offered (the defendant here) admits the writing is genuine or treated it as such. The state's argument that circumstantial evidence supports the genuineness of the writings is beside the point.[2] The court in *State v. Tice,* 30 Or 457, 460-61, 48 P 367 (1897), after reviewing the rules

---

[1] The handwriting on that exemplar was considered to be too distorted to be useful for purposes of comparison.

[2] Handwriting exemplars are admissible for comparison if admitted or treated as genuine by the party against whom they are offered, regardless of whether they would be admissible in evidence for any other purpose. *Munkers v. Farmer's Ins. Co.,* 30 Or 211, 46 P 850 (1896).

followed at common law and those used in various states, stated:

"Our enactment touching the subject differs from any that we have been able to find. * * * The tests of the standard prescribed by the section quoted must be held to exclude any other test that might be permissible elsewhere. Applying these tests, it is clear that the genuine will of Nancy M. Love ought not to have been admitted for the sole purpose of instituting a comparison between the signature to the alleged forged will with her mark constituting her signature to the true one. It does not appear from the record that the defendant had admitted, nor is it shown that he had treated, the true will as a genuine writing; so that it was not competent for the witness, admitting that he was a person skilled in such matters, to institute the comparison."

In *State of Oregon v. Cahill,* 208 Or 538, 544, 293 P2d 169, 298 P2d 214, *cert den* 352 US 895 (1956), the Court elaborated on the statutory rule:

"It follows that a signature acknowledged by the defendant to be genuine is admissible for comparison by experts with the questioned document, but signatures proven to be genuine but not 'admitted or treated as genuine' are not admissible for such purpose. Whether this statutory restriction is wise is not for us to say. The statute is valid and violation of it was error. The legislative purpose in enacting the statute is fairly obvious. The receipt of signatures claimed to be genuine for comparison with a signature claimed to be false, might lead to an almost endless excursion into collateral issues. The jury would first have to resolve every contested question as to the genuineness of the signatures offered for comparison before it could safely use them for comparison with the signature on the questioned document. Signatures conclusively proven to be genuine are as relevant and as significant for purposes of comparison, as signatures 'admitted or treated as genuine' by the defendant.

"The use of the nine checks for comparison was error, not because they were not genuine, and not because they were without probative value, but

simply because they were a type of evidence forbidden by the statute on the grounds of extrinsic policy—the avoidance of collateral issues. In this case we would say that genuineness of the nine checks was conclusively established, but not in the manner required by statute. * * *"

Thus, no matter how strong the circumstantial evidence is that defendant's writing was contained in the employment documents, they were improperly used here for comparison. Defendant had never admitted they were genuine, nor can it be said that he treated them as genuine. Evidence that defendant had worked at two of the stores and had applied for work at the third store may tend to prove the documents pertained to him, but they do not establish that he treated the handwriting on those records as his.

It follows that it was error to have admitted the documents[3] used as exemplars and the expert's opinion testimony based thereon. Considering, however, that this evidence was only a small part of that corroborating the alleged accomplice's testimony, it is highly unlikely that the error affected the outcome. The jury had to believe Losh's testimony in order to convict defendant, and the other corroborating evidence was overwhelming in support of defendant's guilt. The error does not require reversal.

We turn to defendant's remaining assignments of error.

Prior to trial defendant had requested copies of all police reports and statements of witnesses. The district attorney's office had inadvertently omitted from the reports turned over to defendant one report containing a summary of the statement given by Richard Losh to investigators from the Fire Marshall's office. The

---

[3] The documents were also admitted as business records, ORS 41.690. They were not offered, however, as proof of any fact contained in them, but for the purpose of permitting the handwriting expert to refer to them for handwriting comparison purposes. Even if they were admissible as business records, they could not be used as exemplars without meeting the test of ORS 42.070.

omission was discovered at mid-trial during cross-examination of the investigator, and after Losh had been examined and cross-examined. The court then compelled disclosure of the statement and gave defendant the weekend in which to prepare additional cross-examination of Losh. The omitted statement was an important one, and the question is whether the trial court should have imposed a more stringent or different sanction, such as suppression of Losh's testimony, as requested by defendant. Our review of the written report persuades us that there was nothing which defendant could have done if he had been supplied with the statement before trial: the substance of the report was what was said by defendant to Losh, and vice versa, and what the two of them did. We fail to see how any investigation by defendant based upon the report could have accomplished any useful purpose, no matter how much time he had.[4] Losh refused to talk to defendant or his counsel prior to trial. Under the circumstances, the trial court's handling of the matter was appropriate and within his discretion.

Defendant also claims as error the denial by the trial court of defendant's requests at trial for tapes of testimony by Richard Losh and his girlfriend before the grand jury. Defendant argues that not knowing the contents of these witnesses' grand jury testimony, he had no means by which to discover whether their trial testimony differed from it. This thwarted any hope he might have of impeaching their testimony. He contends that his rights to due process of law and to confront the witnesses against him were thus infringed.

Consideration of this issue must be made in light of the "long established policy that maintains the secrecy of the grand jury proceedings," *State ex rel Johnson v. Roth,* 276 Or 883, 885, 557 P2d 230 (1977), quoting *U. S. v. Procter & Gamble,* 356 US 677, 78 S Ct 983, 2 L

---

[4] Defendant relied on an alibi: he was in Vancouver visiting a friend at the time of the fire. The friend so testified.

Ed 2d 1077 (1958). Disclosure may be had in a discrete and limited manner in certain instances, one of which is "when the testimony of a witness at a criminal trial may be inconsistent with his testimony before a grand jury." *State ex rel Johnson v. Roth* at 886; ORS 132.220(1).

ORS 135.855(1)(c) specifically forbids disclosure of the material defendant seeks. That statute provides:

"(1) The following material and information shall not be subject to discovery under ORS 135.805 to 135.873:

"* * * * *

"(c) Transcripts, recordings or memoranda of testimony of witnesses before the grand jury, except transcripts or recordings of statements made by the defendant."

The Court in *State ex rel Johnson v. Roth,* 276 Or at 887, n 5, noted that despite that statute, however, in certain circumstances disclosure of grand jury testimony may be constitutionally compelled. The court cited *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), *State v. Koennecke,* 274 Or 169, 545 P2d 127 (1976), and *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971), for this proposition. Those cases state that due process requires that evidence clearly favorable to a defendant, or clearly material to his guilt or innocence must be disclosed to him. The defendant does not claim that the tapes he seeks would be clearly favorable to him or clearly material to the establishment of his guilt or innocence. He has made no showing "to support at least a belief and contention in good faith that the evidence demanded is 'favorable' to the defendant and 'material' to his guilt or innocence." *State v. Koennecke,* 274 Or at 179. The Supreme Court stated in *Koennecke* at 181, *Brady* is not authority for what defendant here seeks to do, that is, "obtain evidence of unknown import to test and determine whether it helps or hurts his case." This statement is particularly apt here, where the request for disclosure, unsupported by any statement of belief

[647]

that such disclosure would help defendant's case, is weighed against the policy of grand jury secrecy. The trial court properly denied disclosure of the grand jury tapes.

In his final assignment of error, defendant argues that the trial court should have granted defendant's motion for judgment of acquittal on the burglary charge because, he argues, the evidence established that no burglary was in fact committed.

The elements of second degree burglary are stated in ORS 164.215(1):

> "A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime therein."

Defendant argues that the testimony of Richard Losh, relied upon by the state, establishes that there was no unlawful entry because, according to his testimony, defendant had been provided a key to the store by the manager, and had his permission to enter the building to burn it. If the owner had given defendant the key with permission to enter for that purpose, defendant would have a point. But this is not such a case. Here, defendant relies on permission by an agent of the owner to enter a building for the purpose of committing a crime, known to be adverse to the interests of the owner. According to Losh, the manager was concerned about an audit his employer was about to conduct and hired defendant to make it impossible for the audit to be conducted. Not only do those facts negate any express authority in the agent, they also negate any implied or apparent authority of the manager to permit entry for that purpose. *See State v. Keys,* 244 Or 606, 419 P2d 943 (1966).[5] The character of an

[5] *Keys* was decided by a divided court, but has not been overruled. While the rule enunciated by the majority in *Keys* supports our decision here, we need not go so far as the court did in that case. There, the owner of the telephone booth invited the public generally into the booth, but, according to the majority, only to use the telephone in a lawful manner. Here, as noted in the text, the owner did not invite, or even tacitly permit, defendant to enter the store with the manager's key at night to destroy the owner's property, and the record does not support any inference that defendant believed to the contrary.

[648]

entry into the owner's premises is not less unlawful because one of the owner's employees acting outside the scope of his authority invited the defendant and Losh inside to destroy the owner's property.

Affirmed.

**GILLETTE, J.,** concurring in part and dissenting in part.

I concur in all of the majority opinion save for its ruling on the question of whether a burglary was committed. To commit a burglary, one must enter or remain "unlawfully" in a building. ORS 164.215. I would hold that the entry here was not "unlawful."

As the majority opinion discloses, entry in this case was made by means of a key *given* to the defendant and his accomplice by someone—labeled an "agent" by the majority but in fact an accomplice—who was entitled to have the key and, so far as the record here shows, would himself have been entitled to enter the building at the time the defendant did. Under such circumstances, I cannot see how the defendant's *entry*—as opposed to what he did once he was inside—can be called "unlawful." The anomaly of this result is highlighted by the fact that, instead of giving the other two the key, the man who had the key might have gone there and taken the two inside himself or even gone in alone and set the fire. Those acts, I submit, cannot be burglary. Yet, we here hold that the legal equivalent of them *is* burglary.

The majority relies upon *State v. Keys,* 244 Or 606, 419 P2d 943 (1966). In that strange case, the Oregon Supreme Court, by a 4-3 vote, held that one who entered into a telephone booth with the intent to break open its coin box was not only a thief, but a burglar. I am persuaded that, were the same issue raised today, the Supreme Court would have better sense.

I respectfully dissent.