Argued and submitted September 9, 1980, reversed and
remanded for a new trial March 4, 1981

## STATE OF OREGON,

*Respondent,*

*v.*

## CHARLES EUGENE HARTFIELD,

*Petitioner.*

(CA 14132, SC 27019)

624 P2d 588

Judy Danelle Snyder, Portland, argued the cause and filed the briefs for Petitioner.

Thomas Denney, Assistant Attorney General, Salem, argued the cause for Respondent. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Christian W. Van Dyke, Assistant Attorney General, Salem.

LENT, J.

**LENT, J.**

There are two issues. The first is whether, after a witness has testified on direct examination by the state, the defendant is entitled to hear an existing tape recording of that witness's testimony given in the grand jury proceedings that led to the return of the indictment upon which trial is held. We hold the defendant is so entitled. The second issue is whether one may be found guilty of the crime of burglary when, outside of business hours, he enters a retail store intending to commit arson of the store owner's property, but the entry was invited by the manager of the store, to whom the owner had entrusted regulation of entry to the premises. We hold that one may be found guilty.

*FACTS*

On May 11, 1978, fire engulfed a Kinney Shoe Store in North Portland. Investigation led to one Richard Losh who had been hospitalized shortly after the fire for burns to his arms and upper body. Losh later negotiated a guilty plea to second degree arson, testified before the grand jury leading to the indictment of defendant, and subsequently testified as the state's chief witness at defendant's trial.

Prior to commencement of the trial defendant attempted to depose Losh, but Losh declined. Defendant also sought disclosure of the grand jury testimony of Losh and production of the prosecutor's records of the investigation of the fire. The prosecutor supplied certain records, but omitted written reports by investigators of conversations and interviews with Losh and refused to disclose tape recordings of Losh's grand jury testimony.

At trial Losh testified that he and defendant gained entry to the Kinney Shoe Store by means of a key given to defendant by the store manager for the purpose of setting fire to the business to destroy inventory and records prior to an upcoming audit. Losh related that he had used money given to him by defendant to purchase gas cans and gasoline which served as the incinerant to start the fire, that he and defendant had set the fire and that he received $200 for his participation in the arson.

The trial judge, after Losh had testified, ordered disclosure of the written reports of investigatorial interviews with Losh and gave defendant the weekend to peruse the reports and prepare for cross examination but refused defendant's request for production of the tapes of Losh's testimony before the grand jury.

Defendant was convicted of arson in the first degree, arson in the second degree and burglary in the second degree.[1] The Court of Appeals affirmed the convictions. *State v. Hartfield,* 45 Or App 639, 609 P2d 390 (1980).

## I. *Production of Grand Jury Tapes*

The state contends that the trial court did not err in refusing to permit inspection of the tape of Losh's testimony. The argument made in support of that contention rests upon ORS 135.855(1)(c), which provides:

"(1) The following material and information shall not be subject to discovery under ORS 135.805 to 135.873:

" * * * * *.

"(c) Transcripts, recordings or memoranda of testimony of witnesses before the grand jury, except transcripts or recordings of statements made by the defendant."

The state claims that this statute reflects a long established policy that maintains the secrecy of grand jury proceedings and cites *State ex rel Johnson v. Roth,* 276 Or 883, 557 P2d 230 (1976), as authority for that claim. In a sense, *Roth* may be read as so describing ORS 135.855(1)(c), but we believe a closer analysis reveals the true place of ORS 135.855(1)(c) in the statutory scheme.

In *Roth* this court noted the existence of a policy long established by the courts to maintain the secrecy of grand jury proceedings. We further noted that the statutes seek to preserve that policy and cited ORS 132.060, 132.210 and 132.220. ORS 132.060 prescribes the form of oath to be administered to the members of the grand jury, and the oath provides, in part, "that you will keep secret the proceedings before you." ORS 132.210 provides:

---

[1] The two counts of arson resulted from the burning of the owner's property, arson in the second degree, and recklessly endangering nearby protected property of another by that fire, arson in the first degree.

"A grand juror cannot be questioned for anything he says or any vote he gives, while acting as such, relative to any matter legally pending before the grand jury, except for a perjury or false swearing of which he may have been guilty in giving testimony before such jury."

ORS 132.220 provides:

"A member of a grand jury may be required by any court to disclose:

"(1) The testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court.

"(2) The testimony given before such grand jury by any person, upon a charge against such person for perjury or false swearing or upon his trial therefor."

In *Roth* we took note that ORS 135.855(1)(c) was a rejection of a proposal to "broaden" the opportunities for discovery of grand jury testimony and that ORS 135.855(1) reflected the policy already statutorily prescribed by ORS 132.220. We noted the official commentary of the Criminal Law Revision Commission contained in the Proposed Oregon Criminal Procedure Code, Final Draft and Report ("Report"), November, 1972, at page 190:

"Subsection (1)(c) is based upon the *present secrecy* of grand jury proceedings, as prescribed in ORS 132.220." (Emphasis added.)

Exceptions to the secrecy requirements of ORS 132.220 had existed long prior to the enactment of ORS 135.855(1)(c). As we observed in *Roth:*

"However, disclosure of the testimony of witnesses called before the grand jury may be permitted in three instances: (1) when the testimony of a witness at a criminal trial may be inconsistent with his testimony before the grand jury, ORS 132.220(1); (2) when a witness is charged with perjury, ORS 132.220(2); and (3) when permitted by the court in the furtherance of justice, *Gowin v. Heider,* 237 Or 266, 286, 386 P2d 1, 391 P2d 630 (1964)[.]"

276 Or at 886. The "furtherance of justice" exception is not some recent judicial gloss upon ORS 132.220. That section comes from Deady, General Laws of Oregon, Criminal Code, § 58,[2] which was considered by this court in this

---

[2] There is no change in substance from Deady's § 58 to the present ORS 132.220.

respect in *State of Oregon v. Moran,* 15 Or 262, 14 P 419 (1887). The issue was phrased by the court:

> "It therefore becomes necessary to determine whether or not it is competent for the trial court, in the exercise of a sound judicial discretion, to allow a grand juror to testify as to matters which transpired before that body, when, in the opinion of the court, *the ends of justice require it."* (Emphasis added.)

15 Or at 273. Relying upon § 58 and cases from other jurisdictions and upon a quote from a treatise, this court resolved that the grand juror should be allowed to testify.

In 1 Bishop on Criminal Procedure, § 859 (2d ed 1872), the author is concerned with the oath of secrecy taken by a grand juror and concludes the discussion as follows:

> "* * * If we look at the principle on which this question rests, we have the following. The reasons which require the secrecy are of a nature looking to the public good; because, if the grand jury could leave their room and disclose what they are doing, defendants who had not been arrested could make their escape; and because, also, persons would be deterred from voluntarily going forward and informing of crime before them. But when the reasons for keeping the testimony private have passed away, the obligation of secrecy would seem to have ended also. Yet when, in addition to this, *the claims of public justice must go unsatisfied unless the disclosure is made,* the same reason which originally required secrecy requires that the secret be no longer kept. The result, on the whole, is, that, in matter of principle, the disclosure should never be made except in obedience to a duty; but, when, after the offender has been arrested, some demand is made on behalf of public justice, or there is some other call of duty of the like urgency, the obligation of secrecy should yield to the new claim. * * * " (Emphasis added.)[3]

It is seen, therefore, that the idea of piercing the veil of grand jury secrecy "in the furtherance of justice" is not new; it should not be startling.

Despite what the Criminal Law Revision Commission specifically said in its Report at page 190, quoted

---

[3] In *State of Oregon v. Moran,* 15 Or 262, 14 P 419 (1887), the court relied upon a portion of this quoted material.

above, it has been argued to us that ORS 135.855(1)(c) was meant to protect a recording of the testimony of a witness before the grand jury from discovery at any and all times.[4] If so, the Commission and the legislature chose an odd place in which to codify that section. By its own terms, the section applies only to "discovery under ORS 135.805 to 135.873." The Commission's draft from which those sections of ORS are taken separately groups the sections under the name, "Pre-Trial Discovery" as Article 11 of the Final Draft and Report. The commentary reveals the following sense of the Commission with respect to the application of what is now ORS 135.805 to 135.873:

> "Section 321 [pertinent part codified as ORS 135.805] is derived from the ABA Standards Relating to Discovery and Procedure *Before Trial* * * *." (Emphasis added.)

ORS 135.805 describes the applicability of the sections contained in ORS 135.805 to 135.873. In the case at bar we are not concerned with discovery before trial.

If, as has been argued, the Commission and the 1973 Legislature, which acted upon the Commission's Report, meant to absolutely bar a defendant from discovery in the circumstances presented by this case, they chose a strange way to do so. The Commission's commentary as to what it did intend and its placement of the section relied upon as a bar, when taken together with the case law from *State of Oregon v. Moran, supra,* through *Gowin v. Heider,* 237 Or 266, 386 P2d 1, 391 P2d 630 (1964), leads us to the conclusion that there was no legislative intent to overrule the recognized exception to the rule of grand jury secrecy which rests upon furthering justice.[5]

---

[4] We need not reach the constitutionality of the statute if it were so interpreted. *See,* however, *State ex rel Johnson v. Roth,* 276 Or 883, 887 n. 5, 557 P2d 230 (1976).

[5] In *Gowin v. Heider,* 237 Or 266, 286-287, 386 P2d 1, 391 P2d 630 (1964), we approved a quotation from *State v. Mageske,* 119 Or 312, 317, 227 P 1065, 249 P 364 (1926):

> "The principle gleaned from the books, that when the demand for promoting justice either in a civil or criminal case, outweighs the necessities for keeping the testimony before a grand jury secret, or when the reasons for

As its point of departure, the dissent takes the decision of this court in *State v. Foster,* 242 Or 101, 407 P2d 901 (1965), and states that we there adopted the *"Jencks"* rule. We believe that is not the proper interpretation of *Foster.* Indeed, that opinion expressly rejects the assertion that *Jencks v. United States,* 353 US 657, 77 S Ct 1007, 1 L Ed 2d 1103 (1957), provides the basis for the decision in *Foster:*

"It has been urged that the rule we approve is of recent origin and comes as an aftermath of *Jencks v. United States,* 1957, 353 US 657, 77 S Ct 1007, 1 L Ed2d 1103, and the subsequently enacted Jencks Act (18 USCA 3500, (1957)), and is, therefore, limited to practice in the Federal courts. In essence the Jencks Act only codifies the rule that had been of long standing in both federal and many state courts. Orfield, Discovery and Inspection in Federal Criminal Procedure, 1957, 59 W Va L Rev 221. See *Gordon v. United States,* supra, 344 US 419, where the court, in adopting this rule, made this mention of its prior existence: 'Despite some contrary holdings on which the courts below may have relied, we think their reasoning is outweighed by that of highly respectable authority in state and lower federal courts in support of the view that an accused is entitled to the production of such documents.*' (Footnote of citations omitted). The *Gordon* opinion utilized a statement, also found in other cases, by Judge Cooley in *People v. Davis,* 1884, 52 Mich 569, 573, 18 NW 362: 'The State has no interest in interposing an obstacle to the disclosure of facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons.' "

---

keeping the testimony private have passed away, the court in its discretion should release the chain of secrecy and admit such evidence in order to prevent the claims of public justice from being unsatisfied: 1 Bishop on Crim. Proced. § 859; Wharton, Crim. Ev., § 510, and note 5, collating the authorities."

In *United States v. Procter & Gamble,* 356 US 677, 683, 78 S Ct 983, 2 L Ed 2d 1077 (1958), is to be found dictum which recognizes that circumstances may furnish a compelling necessity for modification of the general rule that protects the secrecy of grand jury proceedings:

"We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like. Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly. We only hold that no compelling necessity has been shown for the *wholesale* discovery and production of a grand jury transcript * * *."

242 Or at 104. Although the dissent states that the rule we expressed in *Foster* is based upon questionable observations, we find upon re-examination of Professor Orfield's article and of *Gordon v. United States,* 344 US 414, 73 S Ct 369, 97 L Ed 447 (1953), that the criticized observations are sound.

It is true that in *Foster* we held that the discovery of the state's witness's pre-trial statements could not take place until after the witness had testified upon direct examination. It is also true that we held there was no right to pre-trial discovery of the statements, and that holding has surely been vitiated by the enactment of ORS 135.805 through 135.873.

We do not understand, however, that there is anything in *Foster* or in *State ex rel Dooley v. Connall,* 257 Or 94, 475 P2d 582 (1970), also cited by the dissent as a part of the historical setting of the 1973 revision of the law pertaining to criminal procedure, that should cause us to agree with the dissent's position that ORS 135.855(1)(c) bars discovery of the tape in the circumstances presented in the case at bar.

The dissent has traced some legislative history, which supports a conclusion that some members of the Criminal Law Revision Commission were concerned about destroying secrecy of grand jury proceedings. Our examination of that history leads us to believe that perhaps those members were not aware of then existing statutes and case law above discussed which permitted some piercing of the veil. The "crack" feared by Mr. Blensly had long existed.

It is our conclusion that the legislative history does not lead unerringly either to the result we reach or that for which the dissent contends. Quite simply, we believe that either result is permissible, and we hold that the tape is discoverable in the circumstances in the furtherance of justice.[6]

The state's final position is that if discovery of Losh's testimony before the grand jury is to be allowed,

---

[6] The dissent also relies upon ORS 135.845(2). We find the function of that statute is to require one to produce discoverable material when one finds it even if its existence was not known at the time of request for discovery.

that can only be accomplished as prescribed in ORS 132.220 by calling a grand juror.[7] This argument confuses discovery with manner of proof. ORS 132.220 deals with the power of a court to require a grand juror to testify as a means of proving what took place before the grand jury.[8] Unless the defendant is afforded the right to inspect the tape of Losh's testimony, defendant has no practical method of discovering whether to call a grand juror to testify as to inconsistencies, if any.[9]

■ We hold that after a witness has testified on direct examination by the state, the defendant is entitled to examine an existing tape recording of that witness's testimony given in the grand jury proceedings that led to the return of the indictment upon which trial is held.

■ We do not, by this decision, condone wholesale orders for disclosure of grand jury recordings. Where a witness before the grand jury has testified at trial for the state, a particularized need for disclosure exists for purposes of testing the witness's credibility. *Compare, United States v. Procter & Gamble,* 356 US 677, 683, 78 S Ct 983, 2 L Ed 2d 1077 (1958). As such, the furtherance of justice requires disclosure of prior recorded statements.

## II. Burglary

ORS 164.215(1) defines burglary in the second degree:

---

[7] In *State ex rel Johnson v. Roth, supra* note 4, we stated that it was significant that ORS 132.220 provided for disclosure only by calling a grand juror to testify. We now question that statement. We note that discovery by inspection of the tape and proof of the making of prior, inconsistent statements by the witness before the grand jury, although related, are not the same subjects.

[8] As noted, ORS 132.220 is derived from Deady's Criminal Code, § 58. See note 2, *supra,* and accompanying text. There were no tape records at that time. Discovering what might have occurred before the grand jury could only be accomplished by questioning someone who was present.

[9] We do not here reach the question as to exactly how, if they are found, inconsistencies may be proven. If inconsistencies are found, counsel and trial courts may find ways to present that to the jury other than by calling a grand juror as a witness.

"A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime therein."[10]

The Court of Appeals relied on *State v. Keys,* 244 Or 606, 419 P2d 943 (1966), in affirming defendant's burglary conviction. *State v. Hartfield,* 45 Or App 639, 609 P2d 390 (1980).

*State v. Keys, supra,* involved a situation in which defendant entered an open telephone booth to remove coins from the coin box. This court, in a four-to-three decision, held that under Oregon's burglary statute a burglary is committed where, at the time of entry, an intent had been formed to commit a crime once inside. The majority reasoned that an owner's consent to enter was limited to consent to enter for lawful, intended purposes, and to enter for other purposes was beyond the scope of consent and therefore unlawful.

While the *Keys* majority interpreted entering unlawfully to mean entering with an unlawful intent, the dissent by Goodwin, J., with whom McAllister, C. J., and Sloan, J., joined, would interpret unlawful entry to mean entering by unlawful means. Under the dissent's analysis the intent to commit a crime after entry would be a separate and distinct element of the offense.

The reasoning which led to decisions like *Keys* has been critically discussed by a number of commentators on criminal law in recent years. *See e.g.,* LaFave and Scott, *Criminal Law,* § 96 at 715-717 (1972); *Crime of Burglary,* 4 Will L J 285 (1966); *Reformation of Burglary,* 11 Wm and Mary L Rev 211, 213, 222-225 (1969); *Right to Enter as Defense to Charge of Burglary,* 24 Wash and Lee L Rev 333 (1967). Two of these discussions, *Crime of Burglary* and *Right to Enter as Defense to Charge of Burglary,* are critical

[10] ORS 164.215(1) contains the basic definition of burglary. The statute is taken from Section 136 of the Proposed Oregon Criminal Code, Final Draft and Report of the Criminal Law Revision Commission (1970). The commentary to Section 136 states:

"The basic definition of burglary and the lowest degree of the crime is dealt with by this section. It amounts to nothing more than a form of criminal trespass with two aggravating factors: (1) the premises invaded constitute a 'building'; and (2) the intruder enters or remains with intent to commit a crime therein."

of *Keys* by name and use *Keys* as an example of the lengths to which the law of burglary has been stretched from its common law origins.[11]

■        Oregon's current burglary statute, ORS 164.215, was enacted in 1971, five years after the *Keys* decision. The statute is identical to Section 136 of the Proposed Oregon Criminal Code, Final Draft and Report of the Criminal Law Revision Commission, July, 1970. As we pointed out in note 10 *supra,* the drafters intended that burglary under the revised statutory scheme was to consist of a form of criminal trespass with two aggravating factors:   (1) that the premises invaded be a building, and (2) that the trespasser entered or remained with the intent to commit a crime in the building. The requisite primary element, i.e., criminal trespass, is required to be established. The criminal trespass is then transformed into a burglary only if the aggravating factors are present.

ORS 164.245 defines a criminal trespass as follows:

> "A person commits the crime of criminal trespass in the second degree if he enters or remains unlawfully in or upon premises."

To enter or remain unlawfully is defined in ORS 164.205(3):[12]

> "(a)   To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not

---

[11] Goodwin, J., in his dissent in *State v. Keys,* 244 Or 606, 419 P2d 943 (1966), used the example of a person entering a courthouse under subpoena, intending to commit perjury. Whether he commits perjury or recants his intent and tells the truth, he has committed burglary the moment he steps through the courthouse door under the *Keys* test. For other situations in which our statute with a *Keys* interpretation brings about unintended results *see* LaFave and Scott, Criminal Law, § 96 at 716; *Crime of Burglary,* 4 Will L J 285, 289-290 (1966).

It has been argued that under ORS 164.215 as interpreted by *State v. Keys, supra,* one could commit burglary on one's own property. *Crime of Burglary, supra* at 289, suggesting that one entering his own home with intent to contribute to the delinquency of his 15-year-old babysitter would be guilty of burglary. The hypothetical situation alluded to in *Crime of Burglary* considers the effect of *Keys* in consort with the statutory elimination of the common law element that a burglary must be in the dwelling of another.

[12] The definitions of ORS 164.205(3) and 164.245 are somewhat tautological inasmuch as the definitions are couched in the same words, "enter or remain," as the terms they attempt to define.

open to the public or when the entrant is not otherwise licensed or privileged to do so; or

"(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge."

The situation with which this court was concerned in *Keys* was that of entry into premises which were open to the public. We believe that *Keys* is not controlling in this case, and if the issue presented in *Keys* is again before the court, it must then be decided whether the new statutory definition of unlawful entry requires a different result.

In this case defendant is alleged to have unlawfully entered and remained in the shoe store with intent to commit arson therein. According to Losh, defendant gained entry by use of a key given to him by the store manager for the purpose of entering the store to burn records and inventory of the owner of the retail business.

To prove a burglary, the state must establish a criminal trespass and the aggravating factors which raise the trespass to a burglary. There is no viable contention that the state's evidence was insufficient to prove the aggravating factors. The sole question is whether the evidence satisfies the need to prove an unlawful entry for the purpose of establishing the element of criminal trespass. As noted, the premises were not open to the public, and this defendant's entry was unlawful, therefore, if his entry was not otherwise licensed or privileged.

■  Where one is permitted or invited to enter premises, not open to the public, the state must prove two elements in order to establish that his entry is "not otherwise licensed or privileged." The state must prove that the person extending the permission or invitation was without actual authority to do so and that the entrant knew or believed there was no such actual authority.

This case must be retried by reason of our holding with respect to the grand jury tape. In order to establish an unlawful entry by the defendant, it will be necessary to prove that the manager had no actual authority to permit defendant's entry for the purpose of burning property of Neil I. Moger, the person named as owner thereof in the

indictment, and that defendant knew or believed that the manager had no such authority. That would establish the criminal trespass. If the aggravating factors are also proven, the defendant may be found guilty of burglary.

Reversed and remanded for a new trial.

**TANZER, J.,** dissenting.

I do not dispute the wisdom of requiring the prosecution to provide discovery of recorded grand jury testimony of its trial witnesses. I most strenuously object, however, to the court requiring it in the face of a statute intended to forbid it. The majority's disregard of ORS 135.855(1)(c) is based upon a sophistic distinction. Moreover, I believe "the furtherance of justice" to be an objective of judicial reasoning, not a substitute for reasoning.

The majority requires the prosecution to provide to the defendant any recorded grand jury testimony of any critical state's witness after the direct examination of that witness at trial. Their opinion acknowledges the existence of ORS 135.815 and 135.855, which purport to regulate pretrial discovery and prohibit disclosure of grand jury proceedings, but holds them to be inapplicable because they are operable pretrial and "in the case at bar, we are not concerned with discovery before trial." Because no statute regulates midtrial discovery, the majority holds that we are free to require disclosure of grand jury testimony "in the furtherance of justice."

To the contrary, ORS 135.815 lists what must be disclosed and ORS 135.855 requires that all discovery, including that which was previously ordinarily made midtrial, must be made prior to trial. The timing requirement was not intended to restrict the application of the statute, as the majority holds; it was to make all statutory discovery operative at an earlier time. The history and the words of the statutes demonstrate that the pretrial/midtrial distinction in the proposed opinion is erroneous and that the statutes forbid the role spontaneously propounded in this case.

It is helpful to understand the historical setting. Prior to the adoption of the new Criminal Procedure Code in 1973, there were two nonconstitutional requirements for

disclosure or discovery in criminal cases, one statutory and one common law.[1] Former ORS 133.755 required disclosure of defendant's statements and of property seized from him. We are not concerned with that rule. The other is pertinent. It is found in our decision in *State v. Foster,* 242 Or 101 (1965), wherein this court adopted the so-called *Jencks* rule for Oregon.

In *Jencks v. United States,* 353 US 657 (1957), the US Supreme Court, acting solely in its supervisory capacity over the federal courts, adopted a rule requiring that the prosecution provide to the defense any available statement of that witness after the direct examination of the witness at trial for the purpose of assisting the defense in cross-examination. It was not a constitutionally based rule. The rule was codified in the Jencks Act, 18 USCA 3500. We adopted the rule in *Foster* with no explicit rationale except the questionable observations that "the rule . . . had been of long standing in both federal and many state courts" and the state has no interest to the contrary. 242 Or at 104.

The court specifically held in *Foster,* that the rule was to be operable only during trial after the direct examination of the witness, relying upon Wigmore and a California case. It recognized that midtrial operation of the rule was subject to criticism, citing a law review article, but expressly rejected the idea that the rule was to be operable pretrial. 242 Or at 105.

Thereafter, in *State ex rel Dooley v. Connall,* 257 Or 94 (1970), this court again noted its deliberate decision that discovery of witnesses statements was to be made after direct examination rather than pretrial. We said in dicta:

"The decision in *State v. Foster* that disclosure of written statements of prosecution witnesses is not required pre-trial is in accord with the weight of appellate decisions,

---

[1] This case does not involve constitutional obligations of disclosure. Due process requires that the prosecution provide to the defendant any exculpatory material. *Brady v. Maryland,* 373 US 83 (1963). The constitutional rule may require disclosure of exculpatory grand jury testimony, *State ex rel Johnson v. Roth,* 276 Or 883, 887 note 5 (1976), and it must be provided at a time when the exculpatory material is usable by the defense, *State ex rel Dooley v. Connall,* 257 Or 94, 102 (1970). This case does not involve purportedly exculpatory material, the constitutional rule is not involved, and I mention *Brady* only to narrow and clarify the issue.

7 ALR 3rd, 126-129. *But see* ABA Project on Minimum Standards for Criminal Justice, *supra,* pp. 57-58, wherein it is suggested that the better practice would be to have the disclosure made pre-trial to avoid delay and allow adequate preparation." 257 Or at 101, note 2.

The Supreme Court rejected the ABA approach, but the Criminal Law Revision Commission adopted it. Indeed, all of the proposed and enacted statutes regulating pretrial discovery, including timing, were based upon the ABA Standards Relating to Discovery and Procedure Before Trial (Approved Draft, 1970). *See* Criminal Law Revision Commission, Proposed Oregon Criminal Procedure Code, Final Draft and Report §§ 321 through 327, Commentary at 185 to 191 (1972). The minutes of the Commission make clear that the Commission was considering the mutual disclosure obligations of the prosecution and defense in criminal proceedings generally. There is not the slightest suggestion that they were confining their considerations to pretrial procedures. The disclosure responsibilities of the parties were formulated. The procedures were made operable pretrial with the objective of encouraging guilty pleas and making trials more efficient.

The things which are to be disclosed by the prosecution to the defense are listed in ORS 135.815. See also ORS 135.825. Things to be disclosed by the defense to the prosecution are listed in ORS 135.835. Both statutes purport to define completely the disclosure obligations of the parties regardless of the time of performance. ORS 135.815, setting forth the obligation of the prosecution provides:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:

"(1) The names and addresses of persons whom he intends to call as witnesses at any state of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons.

"(2) Any written or recorded statements or memoranda of any oral statements made by the defendant, or made by a codefendant if the trial is to be a joint one.

"(3) Any reports or statements of experts, made in connection with the particular case, including results of

physical or mental examinations and of scientific tests, experiments or comparisons which the district attorney intends to offer in evidence at the trial.

"(4) Any books, papers, documents, photographs or tangible objects:

"(a) Which the district attorney intends to offer in evidence at the trial; or

"(b) Which were obtained from or belong to the defendant.

"(5) If actually known to the district attorney, any record of prior criminal convictions of persons whom the district attorney intends to call as witnesses at the trial and the district attorney shall make a good faith effort to determine if such convictions have occurred."

The origin of ORS 135.815(1) which requires the district attorney to disclose to defendant the names and statements of his proposed witnesses, is in a draft prepared and explained by then Solicitor General John Osburn. The following excerpts from the minutes are consistent with the Commentary to the ABA Standards and demonstrate that the Commission intended discovery to be made prior to trial as a matter of efficient timing, not to restrict application of the statutes to preliminary proceedings:

"The third major area of discovery in Oregon criminal cases involved cross examination and arose from the case of *State v. Foster,* 242 Or 101, 407 P2d 901 (1965), where a prosecution witness was called to testify. The court held that if he had made prior statements which had been recorded or reported in any way, the defense was entitled to see those written statements prior to beginning cross examination so they could cross examine the witness on his prior statements. *However, prior written statements were not at the present time required to be disclosed pre-trial.*
"* * * * *.

"Mr. Osburn said that in looking at various proposals in other state jurisdictions and at the ABA Standards, the justification for pre-trial discovery appeared to be twofold: it enabled the state and the defense to evaluate their cases more properly before going to trial and, secondly, it eliminated unnecessary trials.
"* * * * *.

"Mr. Osburn noted that the draft was not intended to cover every problem that might arise but was primarily intended to assist the court and the system in keeping

things going, shortening trials and eliminating unnecessary trials.

"* * * * *.

"*Section 2. Disclosure to defendant.* Mr. Osburn explained that the provisions of section 2 were essentially taken from the ABA Standards.

*Subsection (1).* Subsection (1), he said, included relevant written or recorded statements made by witnesses and *would make available to the defense reported statements prior to trial which at the present time needed to be given only at the end of the direct examination. * * * "*(My emphasis.) Minutes, Oregon Criminal Law Revision Commission, July 24, 1972.

The Commission considered whether discovery was to be performed during trial, immediately prior to trial, after arraignment, or on motion. The result of its deliberations was that the mutual obligation to disclose was to be triggered by the indictment and would continue through the trial. Their proposal was enacted without change as ORS 135.845:

"(1)  The obligations to disclose shall be performed as soon as practicable following the filing of an indictment or information in the circuit court or the filing of a complaint charging a misdemeanor or violation of a city ordinance. The court may supervise the exercise of discovery to the extent necessary to ensure that it proceeds properly and expeditiously.

"(2)  If, after complying with the provisions of ORS 135.805 to 135.873, a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, he must promptly notify the other party of the additional material or information."

There is simply no support to be found anywhere in the words or history of this statute to support the idea that we can disregard ORS 135.815 because this statute was meant to restrict the application of the substantive statute to pretrial proceedings. The majority points to nothing and everything is to the contrary. Discovery is a continuing obligation, commencing prior to trial. All the evidence demonstrates that the intention of the statute and its drafters was to cover the field.

The next question is whether recorded grand jury testimony comes within the category of statements of witnesses which are to be provided under the discovery statutes. The statutes and their history demonstrate conclusively that they are not.

ORS 135.815, *supra,* lists those things which must be disclosed by the prosecution to the defense. *See also* ORS 135.825. The list in ORS 135.815 of items to be disclosed by the prosecutor is lifted almost verbatim from those listed in Standard 2.1, ABA Standards *supra* at 13 and 52, with only one exception. The ABA included within its disclosure list:

> "(iii) Those portions of grand jury minutes containing testimony of the accused and relevant testimony of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial."

The deletion of this provision for grand jury testimony from the Oregon statute was intentional. Commentary, *supra* at 186. Commission member Blensly (then District Attorney for Yamhill County, now District Judge Donald Blensly) expressed alarm that the omission left the section silent as to recorded grand jury testimony. Although the provision had been deleted from the ABA version, Blensly feared that silence could be interpreted as tacit authorization for discovery of grand jury proceedings. These excerpts are illustrative:

> "Mr. Blensly recalled that Mr. Osburn had said earlier that the minutes of grand jury proceedings were not included in section 2. Mr. Osburn stated that under subsection (1) an argument could well be made that if there were written or recorded statements of grand jury proceedings, they were included, particularly under the amended language 'memoranda of any oral statements.' Mr. Blensly said that if a court reporter transcribed proceedings of the grand jury, that would certainly be a memoranda [sic] of oral statements and Mr. Osburn agreed. Mr. Blensly was most reluctant to open up grand jury proceedings to a right of discovery. Mr. Osburn said the ABA standards specifically included grand jury minutes, but that provision was not contained in this draft. Mr. Blensly contended that the same result was achieved indirectly and objected to making grand jury minutes discoverable.
>
> "* * * * *.
>
> "Mr. Blensly said the thing he feared most was opening the door of the grand jury room. Once it was opened a

crack, there would be a great many arguments in court to open it all the way, the way California has." Minutes, Criminal Law Revision Commission, June 2, 1972.

So that there could be no possible misunderstanding, it was decided to make explicit the prohibition against discovery of grand jury testimony, with the exception of the defendant's own testimony. The result was ORS 135.855(1)(c):

"(1) The following material and information shall not be subject to discovery under ORS 135.805 to 135.873:

"* * * * *.

"(c) Transcripts, recordings or memoranda of testimony of witnesses before the grand jury, except transcripts or recordings of statements made by the defendant."

As noted above, the majority opinion incorrectly dismisses this statute as inapplicable to discovery during trial because ORS 135.805 to 135.873 are only operable pretrial. ORS 135.845(2), *supra,* in particular specifies that the statutory discovery obligation is a continuing one "either before or during trial." The majority's disregard of the statute is totally unjustified.

Even were there no statute, however, the rationale offered by the majority for its new rule requiring disclosure of recorded grand jury testimony is no more than that it is required "in the furtherance of justice." Whenever an appellate court relies solely upon a phrase as amorphous as that, red flags should fly and sirens should sound because it is usually a signal that the court is accomplishing judicial will rather than legislative or constitutional intent. Aside from contravening ORS 135.855(1)(c), the phrase is an insufficient foundation for the result in this case for several reasons.

First, the phrase has never to my knowledge been held to allow the court to invent a new rule of practice similar to that which the majority holds that it now requires. I am aware of no such case and the majority cites no such case. Second, the cases the majority relies upon to establish our power to breach the secrecy of the grand jury "in the furtherance of justice," *Gowin v. Heider,* 237 Or 266, 286 (1964), *State v. Moran,* 15 Or 262 (1887), predate ORS 135.855, which was enacted in 1973. The majority

opinion (page 7, lines 13 through 20) correctly observes that the Commission did not intend to bar the court from requiring disclosure of grand jury proceedings when necessary to further justice, but the Commission most certainly did intend to prohibit any requirement that grand jury statements be routinely provided in the course of trial. It intended exactly the contrary. The phrase gives us no cause to overrule the statutes.

Nor does ORS 132.220 compel or even support the result of the practice created in the proposed opinion. ORS 132.220 allows proof of grand jury testimony by the calling of a grand juror. The statute is designed to deal with competency of evidence and to authorize a grand juror to breach his oath of confidentiality as to the proceedings before the grand jury. It does not create a right to such testimony; it only describes a permissible manner of proof of testimony which the law otherwise allows to be proved. The statute creates no substantive right. Every case relied upon by the majority is consistent with this statement.

The above discussion demonstrates that the legislature intended to regulate by statute the duty of the defense and prosecution for disclosure by listing what must be disclosed and when it must be disclosed. Unless we can cite a constitutional provision which requires invalidation or modification of the statutory scheme or some part of it, we should abide by it.

I concur in the portion of the majority opinion regarding burglary.