Argued and submitted April 26, 1991, affirmed March 11, reconsideration denied April 15, petition for review denied July 21, 1992 (313 Or 627)

# STATE OF OREGON,
*Respondent,*

*v.*

# THOMAS CARDELL DICKERSON,
*Appellant.*

## (C 88-09-36285; CA A62457)

827 P2d 1354

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Defendant and his codefendant, Walker, were jointly indicted on two counts of aggravated murder, murder, felony murder and first degree kidnapping. Walker was also charged with second degree assault. The jury convicted defendant of murder, felony murder and first degree kidnapping. The murder and felony murder convictions were merged for sentencing. Defendant appeals, and we affirm.

In January, 1987, the victim, Rose Henry, became intimately involved with Walker. She moved into an apartment with him and his girlfriend, Branch. Branch became jealous of Henry, so she and several of her female friends decided to beat her up. On March 1, 1987, Branch and her friends grabbed Henry, tore off her clothing, tied her up, threw her in the bathtub, turned the hot water on and beat her with a belt. Walker and an acquaintance, Jeter, soon arrived. Walker untied Henry and took her into the bedroom and forced her to have sexual relations with him. He then told the women to continue to beat her, which they did, and he also beat her with a metal pipe. Henry was bleeding and only semiconscious.

Walker and Jeter conferred. Walker then left the apartment to pick up defendant and brought him back to the apartment. When defendant arrived, he talked privately with Walker and Jeter. The men then told Henry that she would be taken to the hospital. Defendant asked the other women where Delta Park was. He then drove Henry, Walker and Jeter there. He stopped the car, and Walker told Henry to get out of the car. She did so, and Walker shot her five times in the head.

Walker testified before a grand jury about the involvement of Jeter in Henry's death. Walker testified that he, defendant and Jeter had discussed how to handle the situation. He said that they decided to kill Henry to ensure her silence. He also testified that defendant knew that he was to be the driver and that Walker was to kill Henry. At trial, Walker changed his story to exculpate defendant from any responsibility for Henry's death. He testified that defendant did not know that Henry was to be killed and thought that they were only going to the hospital. Walker further testified

that he asked defendant to pull over in Delta Park under the pretext of relieving himself, and that at that time he killed Henry.

In response to Walker's testimony, the state called an assistant United States attorney, Westphal. At the time of the grand jury proceeding, Westphal had been working for the Oregon Attorney General's office and was assigned to work with the Multnomah County District Attorney's office in the prosecution of gang cases. She was present at the grand jury proceeding and took notes when Walker was examined by a Multnomah County prosecutor.

Westphal was called by the state to relate Walker's grand jury testimony. She testified that Walker said, "It was clear that [defendant] was going to drive and I was going to do the thing; that Jeter told [defendant] to drive and told me to do it and make sure that it was done right, not half done; that [Henry] shouldn't live to say who had done it." Defendant objected to Westphal's testimony on the grounds that it was inadmissible hearsay, that it violated the statutory policy of grand jury secrecy and that there was no statutory authority to allow anyone other than a grand juror to testify concerning a grand jury proceeding. The trial court overruled defendant's objections and admitted Westphal's testimony as prior inconsistent statements under OEC 801(4)(a)(A):

"(4)   A statement is not hearsay if:

"(a)   The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"(A)   Inconsistent with the testimony of the witness and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition."

■     Defendant first argues that Westphal's testimony was not admissible, because a grand jury proceeding is not specifically mentioned in (A) and because it is not an "other proceeding" as used in the subsection. He contends that, because grand jury proceedings generally are not recorded *verbatim*, to include them as "other proceedings" would be inconsistent with the purpose of the rule to ensure the accuracy, reliability and completeness of evidence.

However, nothing in the language of OEC 801(4)(a)(A) limits its application to proceedings that are transcribed. The legislative commentary specifically states that an inconsistent statement before a grand jury is admissible if all of the requirements of the rule are satisfied. Conference Committee Commentary to Oregon Evidence Code Rule 801(4)(a)(A) (1981). The federal rule, which is identical to Oregon's, has been held to apply to statements made in grand jury proceedings. *See, e.g., United States v. Bigham,* 812 F2d 943, *reh'g den* 816 F2d 677 (5th Cir 1987); *United States v. Whitaker,* 619 F2d 1142 (5th Cir 1980). Allowing grand jury testimony to be admitted is not inconsistent with the concern of the rule with accuracy, reliability and completeness. Under the rule, both the declarant and the person describing the grand jury testimony must be available for cross-examination. We conclude that grand jury proceedings are "other proceedings" under OEC 801(4)(a)(A).

■ Defendant also argues that admission of Westphal's testimony violates the general policy of grand jury secrecy, as well as the specific requirements of ORS 132.220:

"A member of a grand jury may be required by any court to disclose:

"(1) The testimony of a witness examined before the grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court.

"(2) The testimony given before such grand jury by any person, upon a charge against such person for perjury or false swearing or upon trial therefor."

Defendant contends that, under the statute, only a grand juror may testify in a later proceeding concerning grand jury testimony and that, because Westphal was not a grand juror, her testimony is not admissible. In *State ex rel Johnson v. Roth,* 276 Or 883, 557 P2d 230 (1976), there is language that implies that testimony by a grand juror is the exclusive means of presenting evidence of testimony of a witness before the grand jury. The court stated, in *dicta,* that, "it is significant that ORS 132.220(1) and (2) provides for disclosure only by calling a member of the grand jury to testify." 276 Or at 887. That language, however, was later questioned in *State v. Hartfield,* 290 Or 583, 592, 624 P2d 588 (1981):

"In *State ex rel Johnson v. Roth,* * * * we stated that it was significant that ORS 132.220 provided for disclosure only by calling a grand juror to testify. We now question that statement. We note that *discovery by inspection of the tape and proof of the making of prior, inconsistent statements by the witness before the grand jury, although related, are not the same subjects.*" (Emphasis supplied.)

In *Hartfield,* the defendant sought discovery of a tape recording of a witness who had testified at the grand jury proceeding that resulted in the indictment on which he was tried. The state argued that he was not entitled to the tape because, under ORS 132.220, the only means to obtain that testimony would be to call a grand juror to testify. The Supreme Court rejected that argument, because it

"confuses discovery with manner of proof. ORS 132.220 deals with *the power of a court to require a grand juror to testify* as a means of proving what took place before the grand jury." 290 Or at 592. (Emphasis supplied.)

The court recognized that there are means to present such testimony, other than calling a grand juror:

"We do not here reach the question as to exactly how, if they are found, inconsistencies may be proven. *If inconsistencies are found, counsel and trial courts may find ways to present that to the jury other than by calling a grand juror as a witness.*" 290 Or at 592 n 9. (Emphasis supplied.)

There is a long established policy that grand jury secrecy be maintained. *State ex rel Johnson v. Roth, supra,* 276 Or at 887. Nonetheless, the legislature and the courts have been allowed to "pierc[e] the veil of grand jury secrecy." *State v. Hartfield, supra,* 290 Or at 588. In adopting OEC 801(4)(a)(A), the legislature authorized the admission of testimony of a witness at a grand jury proceeding, if the declarant also testifies and is available for cross-examination and the later statement is inconsistent with the testimony before the grand jury. There is nothing in the rule that limits its application to declarants who are grand jurors. We conclude that the trial court's admission of Westphal's testimony under OEC 801(4)(a)(A) was proper.

■ Defendant next assigns error to denials of his motions for acquittal on the charges of murder, felony murder and first degree kidnapping. He argues that the only

incriminating testimony came from witnesses who, as a matter of law, were his accomplices and that there is insufficient corroboration of their testimony. He contends:

"The evidence of defendant's involvement came from the testimony of Walker, Lashonda Branch, Sharon Lanelle Woods-Kemp, Michelle Lee Smith, and Jerry Fluker. All of these individuals were arguably accomplices of defendant * * *."

We decline to hold that those witnesses were defendant's accomplices as a matter of law. Defendant asked the court to instruct the jury that Branch, Woods-Kemp and Smith were his accomplices. He did not request an accomplice instruction about Fluker. However, the court refused to give his requested instructions and, instead, gave a general accomplice instruction that allowed the jury to determine if any of them were accomplices. Defendant does not assign error to the instructions that the court did give or its refusal to give his requested instructions.

Defendant is correct that Walker was his accomplice, and the jury was so instructed. It was necessary that his testimony be corroborated by other evidence tending to connect defendant to the crime. ORS 136.440. There was such evidence. The witnesses who were at the house testified that defendant and Walker took the victim to the car and left with her. Although defendant testified that he thought that they were taking her to the hospital, the same witnesses testified that, before defendant left with the victim, he asked for directions to Delta Park. There also was evidence that defendant later showed Fluker a newspaper story about Henry's death and said, "We did it * * * don't say nothing."

Defendant also argues as part of this assignment that the evidence at trial established an affirmative defense to felony murder under ORS 163.115(2):

"It is an affirmative defense to a charge of violating paragraph (b) of subsection (1) of this section that the defendant:

"(a) Was not the only participant in the underlying crime; and

"(b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof; and

"(c)   Was not armed with a dangerous or deadly weapon; and

"(d)   Had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; and

"(e)   Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death."

■   Defendant contends that he satisfied all of those requirements. We disagree. As discussed above, there was evidence from which a jury could conclude that defendant had reasonable grounds to believe that Walker intended to kill the victim. The trial court's denial of defendant's motions for judgment of acquittal was proper.

In defendant's third assignment of error, he argues that the trial court erred in denying his motion for appointment of an independent psychologist to assist in preparing for his sentencing as a dangerous offender. After the conviction in May, 1989, the state moved to have defendant adjudicated a dangerous offender. It informed the trial court that he had already been found to be a dangerous offender after a 1987 conviction on the basis of an evaluation by Dr. Colbach. The trial court appointed Colbach to update his 1987 report.

In June, 1989, defendant moved to have the trial court appoint Dr. Landsdowne, a clinical psychologist, to "assist the Court in assessing the State's motion that a separate dangerous offender sentence be imposed * * *." The trial court then appointed Landsdowne "to examine the Defendant, conduct or review any psychological tests or other data, and to advise the Court by written report * * *." However, defendant refused to be examined by either Landsdowne or Colbach. He renewed his motion for appointment of Landsdowne, not for the purpose of examining him but to assist the defense team in preparing for the dangerous offender sentencing proceeding. The trial court denied the motion, ruling:

"There's just no issue raised here that I know of that's particularly deep and troublesome or highly technical that would prevent [defendant] from being afforded his right to cross examination and anything else in these matters."

■ ■    Defendant argues that he was denied access to an expert witness essential to his case and characterizes Landsdowne as "an agent of the court." An indigent defendant does not have an absolute right to expert witnesses provided at the state's expense. *State v. Berry*, 76 Or App 1, 4, 707 P2d 638 (1985). The trial court has discretion in deciding whether an expert is necessary. *State v. Acosta*, 41 Or App 257, 259, 597 P2d 1282 (1979). As the trial court concluded here, the sentencing proceeding did not present any complex problems requiring that defendant have the assistance of an expert. *See State v. Gleason*, 100 Or App 236, 785 P2d 376 (1990). The examiner appointed by the court, Colbach, presented a report describing defendant's behavior and concluded that he had a serious personality disorder. Defendant had the assistance of two court-appointed lawyers and an investigator and was given a full opportunity to cross-examine Colbach. We conclude that the trial court did not abuse its discretion in refusing to appoint a psychologist to assist defendant.

In his final assignment of error, defendant argues that the trial court erred in not merging the kidnapping conviction into the felony murder conviction. Defendant argues that "every element of the kidnapping and murder charges were [*sic*] required to be proven to support the felony murder charge" and that, consequently, under ORS 161.067(1), separate convictions could not be entered. ORS 161.067(1) provides:

> "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

■    The indictment for felony murder alleged that defendant "did unlawfully and knowingly commit and *attempt to commit* the crime of Kidnapping in the First Degree and Kidnapping in the Second Degree." (Emphasis supplied.) In the indictment for kidnapping, it is alleged that defendant completed the crime of kidnapping in the first degree. Thus, the elements of felony murder and kidnapping do not necessarily overlap. The kidnapping conviction requires proof that defendant committed all of the elements of kidnapping in the first degree. However, to prove felony murder, it was only

necessary to prove that the victim was killed in the course of an *attempt* to commit kidnapping in the first degree *or* second degree *or* in the course of committing kidnapping in the second degree. Proof of felony murder requires proof of the death of the victim, which is not an element of kidnapping in the first degree. Accordingly, under ORS 161.067(1), kidnapping and felony murder are separately punishable. *See State v. Owens*, 102 Or App 448, 795 P2d 569, *rev den* 311 Or 13 (1990). The trial court did not err in refusing to merge the convictions.

Defendant also argues that the trial court erred in making the sentence for kidnapping consecutive to the sentence for felony murder. It found that the kidnapping was not merely incidental to commission of the murder. It found that it was "a separate incident," completed before the murder took place. The record supports that finding, and the consecutive sentence was authorized under ORS 137.123(4)(b).

Affirmed.